293 F.3d 615
 In re LAWRENCE, Debtor.
Barbara C. Lawrence; Lawrence Group, Inc.; Lawrence United Corp. Insurance Agency of Southern California, Inc.; A.W. Lawrence and Company; Lawrence Agency Corp.; Lawrence United Corporation; Lawrence Health Care Administrative Services, Inc.; Global Insurance Company; and Senate Insurance Company, Plaintiffs-Appellants,
v.
Stephen P. Wink; Peter Barton; J. Anthony Boeckh; Robert Campbell; Dale W. Church; Tom Curran; Edward A. Dohring; Sharon Duker; Brian Enright; John Fedele; Walter M. Fiederowicz; Goldberg Charitable Trust; Alan P. Goldberg; Libby Goldberg; Robert J. Higgins; Dan Hogan; Hugh A. Johnson, Jr.; Ken
Leichman; Michael Lindburg; Michael Lounsberry; Louise Lounsberry; Michael D. Marvin; Martin J. Mastroianni; Patricia Mastroianni; Daniel V. McNamee, III; George C. McNamee; Kathleen McNamee; Art Murphy; E. Dennis O'Connor; Maureen O'Connor; Seymour Pearlman; John Puig; Bob Schock; Charles L. Schwager; Beni Sternlicht; Edward Swyer; Thomas Vierengel; Timothy R. Welles; David Wood; Mechanical Technology, Inc.; First Albany Companies, Inc., John Does 1-50; Jane Does 1-50, Defendants-Appellees.
 Docket No. 00-5069(LEAD).
 Docket No. 00-5070(CON).
 Docket No. 01-7579(CON).
 United States Court of Appeals, Second Circuit.
 Argued January 3, 2002.
 Final Supplemental Briefs Received April 4, 2002.
 Decided May 22, 2002.
 
 John W. Bailey (Rebecca A. Slezak, on the brief), Ainsworth, Sullivan, Tracy, Knauf, Warner, and Ruslander, P.C., Albany, NY, for Plaintiffs-Appellants.
 George F. Carpinello, Boies, Schiller & Flexner LLP, Albany, NY (Brian F. Mumford, Harvey & Mumford, Albany, NY, on the brief; Toni C. Lichstein, Douglas W. Henkin, Milbank, Tweed, Hadley & McCloy LLP, New York, NY, on the brief), for Defendants-Appellees.
 Before: FEINBERG and KATZMANN, Circuit Judges, and GLEESON, District Judge.*
 KATZMANN, Circuit Judge.
 
 
 1
 The plaintiffs in these consolidated cases appeal from a judgment of the United States District Court for the Northern District of New York (David N. Hurd, Judge), granting the defendants' motion to dismiss the plaintiffs' insider trading claims as impermissible collateral attacks on a final order of the United States Bankruptcy Court in violation of res judicata. The plaintiffs also argue that even if the District Court properly dismissed their claims, it erred in declining to recharacterize the claims as motions pursuant to Rule 60(b) of the Federal Rules of Civil Procedure ("Rule 60(b)") to reopen the order of the Bankruptcy Court. For the reasons that follow, we decline to address the res judicata issue, but respectfully hold that the District Court abused its discretion in declining to recharacterize the claims as Rule 60(b) motions, and we remand for consideration of plaintiffs' claims pursuant to Rule 60(b)(3).
 
 Background
 
 2
 Prior to the events giving rise to this litigation, the plaintiffs in these two consolidated actions collectively owned 820,909 shares (the "Shares") of the stock of Mechanical Technology, Inc. ("MTI"), although there existed a number of disputes among the plaintiffs as to the actual allocation of shares among them. First Albany Companies, Inc. ("First Albany") held a substantial portion of the remaining stock of MTI.
 
 
 3
 In February, 1997, plaintiffs Barbara C. Lawrence, Lawrence Group, Inc., Lawrence United Corp. Insurance Agency of Southern California, Inc., A.W. Lawrence and Company, Lawrence Agency Corp., Lawrence United Corporation, and Lawrence Health Care Administrative Services, Inc. (collectively, the "debtor-plaintiffs"), who in the aggregate were in possession of 471,841 of the Shares, filed for bankruptcy protection in the Bankruptcy Court for the Northern District of New York (John J. Connelly, Judge). Plaintiff Global Insurance Company ("Global"), which was an affiliate of the debtor-plaintiffs but not a debtor-plaintiff, was in possession of the remaining 349,068 Shares, although certain of the debtor-plaintiffs disputed its ownership of these shares.
 
 
 4
 In June, 1997, First Albany, on behalf of then-anonymous purchasers, expressed interest in purchasing the Shares, but was willing to do so only if it was able to purchase all of the Shares at one time. After negotiations between the debtor-plaintiffs, Global, and First Albany, the plaintiffs agreed to sell the Shares to First Albany at a price of $2.25 per share. The plaintiffs agreed to convey clear title to First Albany, and to resolve the ownership disputes among themselves at a later date. Because it was recognized that at least some, and possibly all, of the Shares were assets of the bankruptcy estates, two of the debtor-plaintiffs on June 20, 1997 moved the Bankruptcy Court pursuant to 11 U.S.C. § 363 for an order permitting the sale.
 
 
 5
 In an initial sale order dated August 12, 1997, the Bankruptcy Court approved the sale and the price, and directed that the 820,909 shares be sold. The proceeds of the shares held by the debtor-plaintiffs were to be deposited in an account subject to the jurisdiction of the Bankruptcy Court with respect to resolution of creditor claims. The order also required (apparently because of the disputes over the actual ownership of the Shares) that the proceeds of the Shares in the possession of Global be deposited in a separate account and remain there pending further orders of the court.
 
 
 6
 Following entry of this initial sale order, Global moved the court (pursuant to, among other procedural provisions, Rule 60) to amend the order to remove the paragraphs requiring Global's proceeds to be impounded in the Bankruptcy Court, arguing that its assets were not part of the bankruptcy estate. On September 9, 1997, the Bankruptcy Court entered an Amended Sale Order (the "Sale Order") stating that Global's proceeds would be deposited in a separate account for forty days after the sale pending proceedings to determine the actual ownership of all of the shares sold pursuant to the Sale Order.
 
 
 7
 Adversary proceedings were initiated on September 18, 1997 among the various debtor-plaintiffs and Global to resolve disputes as to the equitable ownership of the Shares prior to the sale of the Shares. Plaintiff Senate Insurance Company ("Senate") intervened in those proceedings, claiming rights to some or all of "any recovery" by plaintiff Barbara C. Lawrence. Eventually, Global, Senate, and the debtor-plaintiffs reached a settlement, confirmed by an agreement which was dated October, 1998, allocating the proceeds of the sale of the Shares among themselves. The settlement agreement also assigned to Global and Senate the rights of the sellers to bring a securities fraud action, and indicated the percentage interest that each plaintiff would have in any potential recovery.
 
 
 8
 The actual sale of the Shares closed on September 26, 1997, at which time the plaintiffs learned the identity of the purchasers, who were a consortium of individuals consisting primarily of MTI and First Albany insiders. On October 20, 1997, information regarding the successful development of an MTI fuel-cell technology product became public, and shortly thereafter, the value of MTI shares increased to $9.87 per share.
 
 
 9
 On September 9, 1998, the debtor-plaintiffs filed seven adversary proceedings (the "adversary proceedings") in the bankruptcy court against the defendants, alleging that the defendants had concealed information in their possession at the time of the sale about the more rapid than expected development of MTI's fuel-cell technology product. The adversary proceedings asserted that the defendants' alleged concealments constituted fraud and misrepresentation under Section 10(b) of the Securities Exchange Act of 1934 (the "1934 Act") and Rule 10b-5 promulgated thereunder, insider trading under Sections 20 and 20A of the 1934 Act, New York common law fraud, and violations of 11 U.S.C. § 363(n). In addition, all nine plaintiffs on September 9, 1998 filed a fraud action against the defendants in United States District Court stating the same claims raised in the adversary proceedings.
 
 
 10
 On April 1, 1999, the defendants moved in the Bankruptcy Court to dismiss the adversary proceedings as impermissible collateral attacks on the Sale Order. On June 4, 1999, the Bankruptcy Court denied the motion to dismiss, holding that "this Court finds that plaintiffs have requested monetary damages and not rescis[s]ion of the sale.... They're clearly entitled to their day in Court to try to establish such violations, and their actions do not constitute an impermissible collateral attack on my order." On June 10, 1999, the Bankruptcy Court abstained, pursuant to 28 U.S.C. § 1334(c)(1), from further proceedings. The parties agreed to withdraw the reference to the Bankruptcy Court, while preserving the rights of the defendants to appeal the Bankruptcy Court's denial of their motion to dismiss.
 
 
 11
 After two brief procedural detours in the Bankruptcy Appellate Panel of the Second Circuit, which determined that it lacked jurisdiction, the defendants' appeal of the Bankruptcy Court's denial of their motion to dismiss was argued in United States District Court for the Northern District of New York on June 9, 2000. In a thoughtful Memorandum Decision and Order dated September 5, 2000, the District Court reversed the Bankruptcy Court and dismissed the debtor-plaintiffs' complaint. It found that the adversary proceedings, although not styled as motions for rescission, were in substance collateral attacks on the Sale Order which could only permissibly have been brought pursuant to Rule 60(b). That Rule provides in pertinent part:
 
 
 12
 On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: ... (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party ... The motion shall be made within a reasonable time, and [if brought pursuant to Rule 60(b)(3) ] not more than one year after the judgment, order, or proceeding was entered or taken.
 
 
 13
 Fed.R.Civ.P. 60(b). The District Court declined to recharacterize the plaintiffs' claims as Rule 60(b) motions, and held that even had the adversary proceedings been brought as Rule 60(b) motions, the fact that they were filed almost 11 months after the alleged fraud came to light would not satisfy Rule 60(b)'s requirement that a motion thereunder based on newly discovered evidence of fraud be brought within a "reasonable time" of the discovery of the alleged fraud. The District Court thus dismissed the adversary proceedings.
 
 
 14
 As noted above, all nine plaintiffs had on September 9, 1998 filed a fraud action against the defendants in United States District Court stating the same claims raised in the adversary proceedings. This action had been stayed pending resolution of the Bankruptcy Court proceedings, and ultimately was consolidated with the adversary proceedings in the District Court. In a thoughtful Memorandum-Decision and Order dated April 23, 2001, the District Court dismissed this action on res judicata grounds. With respect to the debtor-plaintiffs, the parties had apparently agreed that the District Court's dismissal of the adversary proceedings precluded the separate district court action. Although Global and Senate had not been parties to the adversary proceedings in Bankruptcy Court, the District Court held that Global and Senate were bound by its decision in the adversary proceedings. It noted that Global, although not a debtor, had fully participated in the Bankruptcy Court proceedings before the sale of Shares, had filed a Rule 60(b) motion in Bankruptcy Court, and had joined the adversary proceedings in District Court. It held that Senate had derived its right to sue from debtor-plaintiff Barbara C. Lawrence, and was therefore bound by the result of the adversary proceeding, in which Barbara C. Lawrence had been a party.
 
 
 15
 In this consolidated appeal, all nine plaintiffs appeal the District Court's dismissal of their respective actions.
 
 Discussion
 
 16
 
 I. The District Court's Dismissal of Plaintiffs' Claims as Collateral Attacks on the Order of the Bankruptcy Court
 
 
 
 17
 The plaintiffs' appeal of the dismissal of their adversary proceedings and district court claims on res judicata grounds raises a substantial issue of law which we would ordinarily review de novo. ICOM Holding, Inc. v. MCI Worldcom, Inc., 238 F.3d 219, 221 (2d Cir.2001) (Court of Appeals reviews dismissal of action by district court de novo); In re Bell, 225 F.3d 203, 209 (2d Cir.2000) (in appeal from district court's review of a bankruptcy court ruling, Court of Appeals' review of bankruptcy court is "independent and plenary"). However, for the reasons that follow, we decline in this case to address the merits of the plaintiffs' challenge to the dismissal of their action.
 
 
 18
 We begin by observing that application of res judicata appears to produce an anomalous result under circumstances such as these where the plaintiffs argue that they had no inkling of (and could not have discovered through due diligence) the facts underlying their fraud claims during the sale order proceedings in the Bankruptcy Court. Had the sale in question been an ordinary securities sale rather than one taking place under the aegis of the Bankruptcy Court, plaintiffs' fraud claims would be timely filed. See 15 U.S.C. § 78t-1(b)(4) (claim under § 20A of the 1934 Act must be brought both within five years of fraud (i.e., sale) and one year of discovery or constructive discovery of fraud); Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson, 501 U.S. 350, 361-63, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991) (statute of limitations under Section 10(b) requires that suit be brought both within three years of fraud (i.e., sale) and one year of discovery or constructive discovery of fraud). Indeed, the plaintiffs argue that the common law fraudulent concealment exception to res judicata should apply in this case. There does not appear to be any Second Circuit precedent truly on point,[1] although there exist cases in other circuits and in a district court within this circuit applying a fraudulent concealment exception to res judicata.[2] The issue thus posed is substantial and important; indeed, we have requested and received supplemental briefs from the parties addressing the issue.
 
 
 19
 In addition to being important, the issue posed is also difficult. On the one hand, the plaintiffs' argument that they should not have to forfeit their right to press their claims simply because they sold their shares in bankruptcy court is not without merit, and we are troubled by the fact that the rule embraced by the District Court would severely limit the recourse available to plaintiffs who uncover a fraud more than a year after the purchase in question. On the other hand, applying the fraudulent concealment exception to res judicata here could open the floodgates to future litigation attacking the final orders of sale in bankruptcy court proceeding, a forum where finality of court orders is particularly important.[3] Indeed, several circuit courts have affirmed dismissals of independent actions which aimed effectively to undo a bankruptcy court ordered sale.[4]
 
 
 20
 A related difficulty presented by this case involves the relationship between common law principles of res judicata and Rule 60(b). While the fraudulent concealment cases have generally involved situations outside the framework of Rule 60, the defendants argue that under the Federal Rules of Civil Procedure, the only avenue for reopening a final sale order of a Bankruptcy Court is Rule 60(b), and that the fraudulent concealment claim must therefore be advanced within the procedural framework of Rule 60(b). This argument finds some support in the advisory committee notes to the rules. See Fed. R.Civ.P. 60 advisory committee's note ("If these ... amendments, including principally those to Rule 60(b), accomplish the purpose for which they are intended, the federal rules will deal with the practice in every sort of case in which relief from final judgments is asked, and prescribe the practice."). The fact that Rule 60(b) offers a mechanism for undoing a judgment due to "newly discovered evidence which by due diligence could not have been discovered in time for a new trial" or due to "fraud" makes us reluctant to permit the judgment of a Bankruptcy Court effectively to be undone pursuant to other procedural means. See Fed.R.Civ.P. 60(b)(2), 60(b)(3).[5]
 
 
 21
 Thus, the issues raised by the dismissal of plaintiffs' action are quite difficult. On balance, taking into account our ruling set forth below that the District Court erred in refusing to convert plaintiffs' fraud claims into Rule 60(b) motions, which in any event affords the plaintiffs the "day in court" that they seek on their fraud claims, we have concluded that resolution of the thorny fraudulent concealment issue is better left for another day and a case with a less complex procedural history. Thus, we assume arguendo but do not hold that the defense of res judicata bars the plaintiffs' securities fraud actions, and we proceed directly to reviewing the District Court's decision not to recast the plaintiffs' actions as motions pursuant to Rule 60(b).
 
 
 II. Rule 60(b)
 
 
 22
 The plaintiffs argue that the District Court erred both in deciding not to recharacterize their claims as Rule 60(b) motions and in holding that even were it so to recharacterize the claims, it would dismiss the claims as untimely. The question of the appropriate standard of review of these decisions is not a simple one for us.[6] As an initial matter, we note that it is well-settled that we ordinarily review the dismissal of a Rule 60(b) motion by a district court for abuse of discretion. See, e.g., Cody, Inc. v. Town of Woodbury, 179 F.3d 52, 56 (2d Cir.1999); Branum v. Clark, 927 F.2d 698, 704 (2d Cir.1991). Further, while we have not previously established a standard for reviewing a decision by a district court declining to recharacterize some other claim as a Rule 60(b) motion, the Ninth Circuit, in what apparently is the only case to address the issue, has held that it reviews a district court's decision not to recharacterize a claim as a Rule 60(b) motion only for abuse of discretion. Engleson v. Burlington Northern Railroad Co., 972 F.2d 1038, 1042-43 (9th Cir. 1992). We have previously described the fact that district courts do on some occasions so recharacterize claims as an exercise of "discretion" by such courts, Paddington Partners v. Bouchard, 34 F.3d 1132, 1146 (2d Cir.1994), and agree with the Ninth Circuit that the deferential treatment due a district court in the Rule 60(b) context of potentially reopening a closed case would ordinarily make abuse of discretion the appropriate standard for reviewing a district court's decision on whether or not to recharacterize a claim as a Rule 60(b) motion.
 
 
 23
 We are, however, somewhat uncomfortable with application of the abuse of discretion standard in this procedural context to the District Court's decision not to recharacterize the plaintiffs' claims as Rule 60(b) motions and to the District Court's holding that it would in any event dismiss any such recharacterized claims as untimely. In this case, the District Court's consideration and rejection of the plaintiffs' potential Rule 60(b) claim arose in the course of its appellate review of the Bankruptcy Court. The District Court would have been required to review for abuse of discretion any decisions by the Bankruptcy Court with respect to Rule 60(b), and we would have then reviewed the District Court's decision de novo. In re Bell, 225 F.3d at 209 (in appeal from district court's review of a bankruptcy court ruling, Court of Appeals' review of bankruptcy court is "independent and plenary"). The Bankruptcy Court, however, never reached the Rule 60(b) issues in this case, because its decision to allow the plaintiffs' securities law claims to proceed rendered moot the Rule 60(b) issues. The District Court thus was the first and only court actually to decide the Rule 60(b) issues. The deferential abuse of discretion review of a district court's Rule 60(b) decisions discussed above reflects both the proximity of a district court to the facts of a case and the fact that a district court typically is being asked under Rule 60(b) to revisit its own final order or decision. See Parker v. Broadcast Music, Inc., 289 F.2d 313, 314 (2d Cir.1961) ("A motion under Rule 60(b)... to vacate a judgment is addressed to the sound discretion of the court that entered the judgment...."). In the procedural posture of this case, however, the District Court was not really closer to the facts in rendering its decision to dismiss any potential Rule 60(b) motion than are we, nor was it considering a motion to reopen its own decision. Further, as discussed below, the Bankruptcy Court (which was closest to the facts and had issued the original order), while explicitly deciding not to address the Rule 60(b) issues, seemed favorably disposed to allowing the plaintiffs an opportunity to advance their claims. The deference underlying the abuse of discretion standard is thus conceptually less appropriate for our review of the District Court's Rule 60(b) decisions in this case than it is for our review ordinarily of a district court's Rule 60(b) decisions.
 
 
 24
 Nonetheless, we decide not to depart from the well-settled rule that we review dismissal of a Rule 60(b) motion by a district court for abuse of discretion. The plaintiffs have been unable to call to our attention (and we have not found on our own) any circuit court case reviewing de novo a district court's dismissal of a Rule 60(b) motion under circumstances where the district court was the first court to address the issue. We therefore adopt the Ninth Circuit's standard and review for abuse of discretion the District Court's decision not to recharacterize the plaintiffs' securities claims as Rule 60(b) motions, and we review as well for abuse of discretion the District Court's decision in the alternative that even were it so to recharacterize the claims, it would find that the plaintiffs had failed to advance the motions within the "reasonable time" required by Rule 60(b). However, while we thus review the District Court's Rule 60(b) decisions for abuse of discretion, we consider within our evaluation of the District Court's exercise of its discretion whether the District Court accorded appropriate deference to certain considerations raised by the procedural posture of this case, most importantly the signals of the Bankruptcy Court to the effect that it was favorably disposed towards allowing the plaintiffs' action to proceed.
 
 
 25
 In light of the very unusual factual background and procedural posture presented by this case, we agree with the plaintiffs that the District Court abused its discretion in not recharacterizing their actions as Rule 60(b)(3) motions. As noted above, we ordinarily review an exercise of discretion by a district court under Rule 60(b) with great deference, but because the District Court here was not itself the court that entered the original order, its discretion was constrained by an obligation to consider the views of the court that entered the original order.[7] In this case, the Bankruptcy Court which had entered the original Sale Order was disposed to allow the plaintiffs' claims to proceed. It commented that
 
 
 26
 [t]his action ... is not directed at the sale, but damages arising from non-disclosure of material information known to the defendants ... this Court finds that defendants are engaging in tactics to obfuscate the record ... [i]f there were misrepresentations at the time of the sale, this Court approved such sale not fully knowing all the salient facts.... this Court finds that plaintiffs have requested monetary damages and not rescision [sic] of the sale. Plaintiffs contend that there were securities violations [sic] of the underlying sale transaction. They're clearly entitled to their day in Court to try to establish such violations, and their actions do not constitute an impermissible collateral attack on my order.
 
 
 27
 It also at one point accused the defendants of "engaging in tactics to obfuscate the record." These indications that the Bankruptcy Court which had entered the original Sale Order was inclined to ensure that the plaintiffs received a "day in court" strongly militated in favor of the District Court recharacterizing the actions as Rule 60(b)(3) motions once the District Court had decided to dismiss the independent securities fraud actions.[8] The late scholar Maurice Rosenberg, whose expertise in the area of abuse of discretion review we have previously acknowledged, Zervos v. Verizon N.Y., Inc., 252 F.3d 163, 169 n. 6 (2d Cir.2001), wrote that it is best to "reserve" trial court discretion to "matters as to which ... the trial judge is better situated than his appellate colleagues to pass final judgment." Maurice Rosenberg, Judicial Discretion of the Trial Court, Viewed From Above, 22 Syracuse L.Rev. 635, 667 (1971). In this case, not only is this court arguably as well situated as the District Court to consider the issues raised by Rule 60(b), the Bankruptcy Court was better situated than either the District Court or this court. We are of the view that the District Court should have afforded due consideration to the views of the Bankruptcy Court in deciding whether to permit plaintiffs to pursue a Rule 60(b) remedy.
 
 
 28
 We wish to emphasize that our finding is heavily based on the unique procedural posture of this case. Many Rule 60(b) motions will be directed to judges who did not enter the original order in question (often for reasons as mundane as turnover on the bench), and we do not imply that in every such case the court faced with the Rule 60(b) motion is obligated to engage in an extensive analysis to divine the disposition of the original court, or bound by any such determination of the original court's disposition. In this case, however, the District Court was not merely considering a Rule 60(b) motion in a case in which it had not originally entered the challenged order. It was standing in appellate review of the Bankruptcy Court's decision. The District Court decided the Rule 60(b) issue only because it reversed a Bankruptcy Court decision, which decision would itself have addressed whether the plaintiffs' claims should be converted into Rule 60(b) motions had it reached the same legal result on the res judicata issue reached by the District Court. Under these circumstances, we think the District Court should have accorded appropriate deference to the views of the Bankruptcy Court.
 
 
 29
 Our finding also rests on our view that the facts alleged in plaintiffs' complaint are precisely the types of facts under which Rule 60(b)(3) relief is appropriate. The alleged fraud was not, and could not with due diligence have been, discovered during the original Sale Order proceedings. Indeed, during those proceedings, the Bankruptcy Court focused almost exclusively on the issues relating to segregation of the sale proceeds pending resolution of the various disputes among the plaintiffs. The discussion of fairness of price during the Bankruptcy Court proceedings was limited to representations by the parties (i) that $2.25/share had been the most recent trading price of MTI stock, and (ii) that no better offer for the plaintiffs' block of stock had been received, even though the plaintiffs had widely publicized the fact that they wished to sell the Shares. No party contested the fairness of the price during the Sale Order proceedings, nor did any discussion of MTI's fuel-cell research or operations arise during those proceedings.
 
 
 30
 Further, the complaint and record contain circumstantial indications that the alleged fraud of the defendants prevented the issue of fairness from being fully explored during the Sale Order Proceedings. See Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1128 (2d Cir.1994) (in order to plead fraud with particularity, "plaintiffs [must] allege facts that give rise to a strong inference of fraudulent intent. The requisite strong inference of fraud may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness.") (emphasis added) (internal citations and quotations omitted); O'Brien v. National Property Analysts Partners, 936 F.2d 674, 676 (2d Cir.1991) (scienter in fraud allegations may be pleaded by "inference" if supported by sufficient "factual basis"). In the instant case, the purchasers of the Shares elected to remain anonymous, and no meaningful explanation for their anonymity was given in response to a question from the Bankruptcy Court during the Sale Order proceedings. The purchasing group turned out to consist of various insiders, many of whom would likely have had access to any material information about the company's operations. While the defendants allege that they possessed no material information that was not already in the public domain, the announcement of MTI's fuel-cell advances less than a month after the closing of the sale casts some doubt on that assertion. In view of the fact that the stock price more than quadrupled upon MTI's October 20, 1997 announcement, we are skeptical of the defendants' assertions that the marketplace was already aware of the pace of MTI's progress in developing its technology. Because the complaint sets forth these particular allegations of fraud which could not have been uncovered by the plaintiffs during the original proceedings, and because the Bankruptcy Court which had entered the Sale Order seemed eager to give the plaintiffs their day in court, we believe that the District Court should have recharacterized the plaintiffs' claim as Rule 60(b)(3) motions.
 
 
 31
 We also differ with the District Court's holding that the plaintiffs' claims, even if recharacterized as Rule 60(b)(3) motions, would be untimely. Under Rule 60(b)(3), a claim of fraud must be brought both within one year of the entry of the original order and within a "reasonable time." Fed.R.Civ.P. 60(b) ("the motion shall be made within a reasonable time, and ... not more than one year after the judgment, order, or proceeding was entered or taken."). The plaintiffs allowed more than ten months after the announcement of MTI's fuel-cell research advances to pass before bringing their claim,[9] and we would not always hold that it is an abuse of discretion for a district court to find such a delay unreasonable. However, the plaintiffs in this case filed suit pursuant to the securities laws, and believed that they were governed by the one-year from discovery statute of limitations. See 15 U.S.C. § 78t-1(b)(4); Lampf, 501 U.S. at 361-63, 111 S.Ct. 2773. Given that, as discussed above, the question of whether the plaintiffs could legitimately bring an independent securities fraud action presents a difficult and intricate issue of first impression, we can understand the plaintiffs' reliance on the securities laws statute of limitations.[10] We therefore hold that the District Court abused its discretion in finding that the plaintiffs' delay was unreasonable.
 
 Conclusion
 
 32
 The judgment of the District Court is Vacated. We remand for consideration of the plaintiffs' allegations of fraud pursuant to Rule 60(b)(3).[11] In light of this disposition, we deny the defendants' request for attorneys' fees and costs.
 
 
 
 Notes:
 
 
 *
 The Honorable John Gleeson of the United States District Court for the Eastern District of New York, sitting by designation
 
 
 [1]
 We have, however, stated that "[r]es judicata applies even where new claims are based on newly discovered evidence, unless `the evidence was either fraudulently concealed or it could not have been discovered with due diligence.'" See L-Tec Electronics Corp. v. Cougar Electronic Organization, Inc., 198 F.3d 85, 88 (2d Cir.1999) (quoting Saud v. Bank of New York, 929 F.2d 916, 920 (2d Cir.1991)).
 
 
 [2]
 See Bell v. City of Milwaukee, 746 F.2d 1205, 1227 (7th Cir.1984); McCarty v. First of Georgia Ins. Co., 713 F.2d 609, 612-13 (10th Cir.1983); King v. Galluzzo Equipment & Excavating, Inc., 2001 WL 1402996, No. 00 Civ. 6247, at *6-11 (E.D.N.Y. Sept. 8, 2001).
 
 
 [3]
 See In re American Preferred Prescription, Inc., 255 F.3d 87, 92 (2d Cir.2001) (citing cases involving bankruptcy court orders approving sales of property of estate for proposition that "some orders of bankruptcy courts... are final judgments, which, if not timely appealed (or timely challenged under [Rule 60(b)]), are entitled to res judicata effect."); see also Corbett v. MacDonald Moving Services, Inc., 124 F.3d 82, 88-89 (2d Cir.1997) (special consideration in bankruptcy context is whether new action will "impair, destroy, challenge, or invalidate the enforceability or effectiveness of the reorganization plan.")
 
 
 [4]
 Robertson v. Isomedix, Inc. (In re International Nutronics, Inc.), 28 F.3d 965, 969-71 (9th Cir.), cert. denied, 513 U.S. 1016, 115 S.Ct. 577, 130 L.Ed.2d 493 (1994) (res judicata bars antitrust claim by debtor against purchasers of debtor's property pursuant to sale approved by order of bankruptcy court); Hendrick v. Avent, 891 F.2d 583, 587 (5th Cir.), cert. denied, 498 U.S. 819, 111 S.Ct. 64, 112 L.Ed.2d 39 (1990) (dismissing RICO and fraud claims where "the determination by the bankruptcy court [was] the final authorization of the transfer of title and the subsequent adversary proceeding [was] a direct challenge to that transfer of title" because "the proper medium for a challenge to the original bankruptcy court's order is through a direct challenge of that order"); Gekas v. Pipin (In re Met-L-Wood Corp.), 861 F.2d 1012, 1018 (7th Cir.1988), cert. denied, 490 U.S. 1006, 109 S.Ct. 1642, 104 L.Ed.2d 157 (1989) (Posner, J.) (affirming dismissal of fraud suit as impermissible collateral attack on bankruptcy court's order and "hold[ing] that confirmed sales—which are final judicial orders — can be set aside only under rule 60(b)"); Southmark Properties v. Charles House Corp., 742 F.2d 862, 870-72 (5th Cir.1984) (res judicata barred breach of contract claims asserted by bankruptcy seller against purchaser of real estate pursuant to court-approved sale).
 However, only one of these cases appears to involve a situation where the plaintiffs alleged fraud rooted in facts of which they had been unaware during the initial proceedings, and that decision did not specifically analyze the fraudulent concealment issue. Hendrick, 891 F.2d at 585 (invoking res judicata to bar claims in connection with a sale approved by the Bankruptcy Court even where a plaintiff's RICO and fraud claims occurred in a context where "at the time of the bankruptcy court ruling, neither [the plaintiff] nor the court had full knowledge of all that had taken place in a complex scheme of facts," but not analyzing the import of fact that the plaintiffs had been unaware of the underlying facts).
 
 
 [5]
 The savings clause of Rule 60(b), which provides that "[t]his rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding, or to grant relief to a defendant not actually personally notified ... or to set aside a judgment for fraud upon the court," may provide a basis for invocation of the fraudulent concealment exception within the framework of Rule 60(b). However, we have held that the savings clause generally cannot be used to preserve an ordinary Rule 60(b)(3) fraud claim which could have been asserted in a timely manner,Campaniello Imports, Ltd. v. Saporiti Italia S.p.A., 117 F.3d 655, 663 (2d Cir.1997), so this case (which involves alleged fraud discovered within one year) is not an ideal case for consideration of the relationship between the savings clause and the common law fraudulent concealment exception.
 
 
 [6]
 Indeed, we sought and received supplemental briefing on the issue from the parties
 
 
 [7]
 We have recently stated that "`abuse of discretion' is famously slippery — its meaning can vary between contexts."Zervos v. Verizon N.Y., Inc., 252 F.3d 163, 169 n. 4 (2d Cir.2001). Judge Friendly noted over twenty years ago the existence of "radically different notions" of abuse of discretion, contrasting a Ninth Circuit statement that "discretion is abused only where no reasonable man would take the view adopted by the district court" with First Circuit language to the effect that "`[a]buse of discretion' is a phrase which sounds worse than it really is. All it need mean is that, when judicial action is taken in a discretionary matter, such action cannot be set aside by a reviewing court unless it has a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors." Buffalo Courier-Express, Inc. v. Buffalo Evening News, Inc., 601 F.2d 48, 59 & n. 18 (2d Cir.1979) (internal citations omitted).
 
 
 [8]
 We realize that the Bankruptcy Court specifically declined to rule on Rule 60(b), and clearly viewed the character of the plaintiffs' claims as distinct from a Rule 60(b) claim. Nonetheless, we think that the totality of the Bankruptcy Court's comments clearly indicate that it viewed the alleged fraud as casting into doubt the legitimacy of the original Sale Order
 
 
 [9]
 Both the District Court and the parties appear to use the October 1997 fuel-cell technology announcement as the date from which the "one year" period of Rule 60(b) began to toll. The language of Rule 60(b) provides, however, that the appropriate measuring date is September 9, 1997, the date of the Sale Order. Thus, plaintiffs' claims, dated September 9, 1998, were actually brought on the last possible day to avoid automatic disqualification as untimely. Fed.R.Civ.P. 60(b)
 
 
 [10]
 We do not, however, imply that a plaintiff can satisfy the Rule 60(b) "reasonable time" requirement simply by asserting that it was guided by an erroneous statute of limitations
 We also note that the plaintiffs explain their delay in bringing their claim by reference to the continuing uncertainty surrounding the ownership of the Shares, and state that they filed their claims almost immediately after the resolution of the ownership disputes (which resolution they represent occurred in August 1998, although the actual settlement agreement was not signed until October 1998 and was not approved by the Bankruptcy Court until February 1999). While we recognize that a party may be hesitant to bring a claim if it does not know precisely the size of its stake in the claim, we would not necessarily accept this explanation by itself as a basis for the plaintiffs' delay, because the "reasonableness" inquiry considers not only concerns affecting the party seeking to invoke Rule 60(b), but also the interests in finality of other parties and interested non-parties, such as creditors of the estate. Viewed in light of the fact that the plaintiffs believed their claim was governed by the securities laws, however, we view this explanation as further indication that the plaintiffs behaved reasonably.
 
 
 [11]
 We briefly note that Global and Senate may participate as parties on remand. Both have argued, in an attempt to overcomeres judicata, that as non-parties to the original proceedings, they lack standing to bring a Rule 60(b) motion. However, several circuit courts have permitted a non-party to bring a Rule 60(b) motion or a direct appeal when its interests are strongly affected, and we have permitted such a motion on at least one occasion. See Dunlop v. Pan American World Airways, Inc., 672 F.2d 1044, 1052 (2d Cir.1982) (non-party plaintiffs had standing to invoke Rule 60(b)(6) to amend a federal judgment, where they were "sufficiently connected and identified with the ... suit"); Eyak Native Village v. Exxon Corp., 25 F.3d 773, 777 (9th Cir.), cert. denied, 513 U.S. 943, 115 S.Ct. 351, 130 L.Ed.2d 307 (1994) (non-party may seek Rule 60(b) relief from a judgment procured by fraud if non-party's "interests are directly affected."); Binker v. Pennsylvania, 977 F.2d 738, 745 (3d Cir.1992) (citing EEOC v. Pan American World Airways, Inc., 897 F.2d 1499, 1504 (9th Cir.1990)) (non-party permitted direct appeal where equities favor hearing the appeal, where non-party participated in the settlement agreement, and non-party had a stake in its proceeds discernable from the record); Southerland v. Irons, 628 F.2d 978, 980 (6th Cir.1980) (Rule 60(b) claim of fraud on the court may be raised by a non-party). In this case, Global and Senate may participate in the Rule 60(b) motion. Indeed, Global has already been permitted to make one such motion in the Bankruptcy Court.