In re: 310 ASSOCIATES, Debtor.

**Gey Associates General Partnership, Creditor–Appellant,**

v.

**310 Associates, Debtor–Appellee.**

**Docket No. 02–5070.**

United States Court of Appeals, Second Circuit.

Argued: Sept. 25, 2003.
Decided: Oct. 2, 2003.

Leo Fox, Law Office of Leo Fox, New York, NY, for Appellant.

Michael J. Venditto, Anderson, Kill & Olick, P.C., New York, NY, for Debtor–Appellee.

Before: MESKILL, KATZMANN, and RAGGI, Circuit Judges.

PER CURIAM.

This case presents the issue whether Fed.R.Civ.P. 60(b)(1) authorizes a district court to relieve a party from the effects of a judgment based on the court's own mistake of fact. We hold that it does and affirm the court below.

## BACKGROUND

The relevant facts are largely undisputed.

Appellee–Debtor 310 Associates ("310") is a limited partnership under New York

law. 310's only asset is a rental apartment building located at 310–318 West 53rd Street in New York City, and its only income comes from the rental roll of that building ("the Building"). The Building was subject to five mortgages, but the rental income it generated was not sufficient to maintain the mortgage payments. Therefore, 310 fell increasingly behind on its obligations to its mortgagors. After various negotiations and renegotiations, the 310 partners decided that their best course of action was to sell the Building.

After searching for a buyer, 310 contracted in October 2000 with non-party Richard Kramisen to sell the Building to Kramisen for approximately $3.1 million. Kramisen made a $100,000 down payment, an additional $50,000 deposit a few weeks later, and was to pay the balance at the closing. Almost immediately after the contract was executed, however, Kramisen and 310 began to renegotiate the terms of the sale. At Kramisen's request, the closing, which had originally been scheduled for January 2001, was postponed. There is some dispute as to whose fault the delays were, but the disagreement is not relevant to this appeal. Finally, the closing was scheduled for March 15, 2001; Kramisen also agreed to an increased deposit and a contract addendum stipulating that time was of the essence in the contract of sale.

While this negotiation was taking place, 310 looked for a backup buyer to protect itself in case the Kramisen deal fell through. In February 2001, 310 entered into a contract with Appellant Gey Associates ("Gey") to buy the Building if the Kramisen sale did not close. The purchase price was the same, but the deposit was higher, and Gey's obligation was conditioned upon the failure of the Kramisen agreement.

The agreement also specified that if 310 went into bankruptcy, Gey would have the right to cancel the contract. Furthermore, if 310 filed for bankruptcy and Gey did not cancel the contract, but the bankruptcy court voided the contract and sold the Building for an equal or better price than Gey had offered, then Gey was entitled to a so-called "breakup fee." A breakup fee, also known as a "termination fee," or a "cancellation fee," is a fee paid by the seller of an asset to a previously contracted buyer that loses its opportunity to buy the asset. The purpose of a breakup fee is to compensate the would-be buyer for its expenses and efforts in negotiating the sale and to provide an added incentive for the seller to carry through on the contract. The agreement in question specified that the breakup fee was to be the higher of (i) $100,000 or (ii) one-half the difference between Gey's purchase price and the actual sale price.

Kramisen and 310 did not close on March 15, as their amended agreement had provided. The record reflects a vigorous dispute between 310 and Kramisen as to who should bear the blame for this failure, but that dispute is not relevant to his appeal. After the breakdown in communication between 310 and Kramisen, one of the mortgagors of the Building, despairing of the Building ever being sold, initiated foreclosure proceedings. On March 14, Kramisen filed suit in state court, seeking specific performance of the sale contract and placing a lien on the Building, which prevented 310 from selling it to Gey. Given that the Building could not be sold to anyone until the lien was resolved, and fearing that it would lose title in foreclosure before the lien could be lifted, 310 filed a petition in the United States Bankruptcy Court for the Southern District of New York (Gerber, *B.J.*) on May 11, 2001.

■ After the bankruptcy proceeding was initiated, 310 petitioned the bankruptcy court to allow the sale of the Building to Gey to proceed. In an Order dated June 8, 2001 ("the June 8 Order"), the bankruptcy court approved the sale of the Building free of all liens and encumbrances. The court ordered that 310 solicit bids on the building, in an auction format, and set various dates for completing the auction, hearing objections to the sale, and entering final approval of any sale. The June 8 Order also approved the breakup fee to Gey. Breakup fees are sometimes authorized in the bankruptcy auction sale context because they provide an incentive for an initial bidder to serve as a so-called "stalking horse," whose initial research, due diligence, and subsequent bid may encourage later bidders. *See Official Comm. of Subordinated Bondholders v. Integrated Resources, Inc. (In re Integrated Resources),* 147 B.R. 650, 661–62 (S.D.N.Y.1992) (discussing relation between stalking horse and breakup fee). The breakup fee compensates the stalking horse for the risk it shoulders in being the first bidder.

On June 22, Kramisen filed an objection to the sale and removed his specific performance action to the bankruptcy court. At a status conference on June 28, Kramisen informed the court that he intended to seek a stay on any sale until his rights to purchase the property had been adjudicated. The court noted that it had been unaware of Kramisen's continued interest in the Building when it entered the June 8 Order. The court *sua sponte* stayed the auction, requested briefing from the parties as to the availability and appropriateness of Fed.R.Civ.P. 60(b) to modify the June 8 Order, and instructed the parties to meet and try to negotiate a voluntary resolution. Kramisen subsequently offered $100,000 more than the original contract price. 310 then filed an amended petition for sale authority, noting that it no longer

believed that the June 8 Order's provisions were in the best interests of the estate. In a hearing on June 11 the court orally vacated the June 8 Order pursuant to Rule 60(b), on the grounds of, *inter alia,* mistake of fact. The court noted that Gey was not a stalking horse after all, because there were already two engaged bidders interested in the property. The oral ruling was incorporated into an Order dated July 18, and the property was sold to Kramisen on August 24, 2001.

Gey appealed, arguing that the bankruptcy court erred in vacating that part of the June 8 Order that provided Gey with the breakup fee. In an unpublished order dated October 23, 2002, the United States District Court for the Southern District of New York (Stein, *J.*) affirmed the bankruptcy court. This appeal followed.

## STANDARD OF REVIEW

■ Rule 60(b) decisions are reviewed for abuse of discretion. *Lawrence v. Wink (In re Lawrence),* 293 F.3d 615, 623 (2d Cir.2002). While we owe no deference to the district court's determination that the bankruptcy court was not in error, we should reverse the bankruptcy court only if we determine that it has abused its discretion. *Id.*

## DISCUSSION

The text of Rule 60(b) reads, "On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect." Fed.R.Civ.P. 60(b). In the original version of the Rule, relief was permitted a party for *"his* mistake"; the 1946 amendments changed to language to make clear that relief from judgment was available for any mistake, including

the mistake of the court. *See* 12 James Wm. Moore, et al., *Moore's Federal Practice* § 60.41[3] (3d ed. 2003) ("*Moore's Fed. Prac.*") (discussing amendments to Rule 60 that allow relief from mistakes by court); *see also* Fed.R.Civ.P. 60(b) advisory comm. note to 1946 amend.

■ In two early cases, this Court established a principle that Rule 60(b)(1) was available for a district court to correct legal errors by the court. *See Schildhaus v. Moe*, 335 F.2d 529 (2d Cir.1964); *Tarkington v. United States Lines Co.*, 222 F.2d 358 (2d Cir.1955). In *Schildhaus*, Judge Friendly, writing for the panel, observed that the use of Rule 60(b) to correct a court's own mistakes of law was much more efficient than requiring an aggrieved party to appeal. *Id.* at 531. The panel also cited with approval the recommendation from *Moore's Federal Practice* that Rule 60(b)(1) motions not be permitted past the deadline for filing a notice of appeal, thereby preventing Rule 60(b)(1) from becoming a way to assert an otherwise time-barred appeal. *Id.* (citing *Moore's Fed. Prac.* § 60.23(3–4), at 239 (1955)).

Although some circuits have resisted an expansive use of Rule 60(b) to correct the court's mistakes of law, *see Silk v. Sandoval*, 435 F.2d 1266, 1267–68 (1st Cir.1971), Judge Friendly's approach has remained the law of this circuit. *See Int'l Controls Corp. v. Vesco*, 556 F.2d 665, 670 (2d Cir. 1977); *see also id.* (holding that Rule 60(b)(1) motion may not be brought after time for appeal has run); *see generally* 11 Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, *Federal Practice & Procedure* § 2858, at 293–300 (2d ed. 1995) (reviewing cases and noting concern over getting around time limit on appeal).

These cases concern the use of Rule 60(b)(1) to correct a court's mistake of law, however, rather than a mistake of fact. In *Cappillino v. Hyde Park Cent. Sch. Dist.*, 135 F.3d 264 (2d Cir.1997), we implicitly extended this rule to the correction of mistakes of fact. In *Cappillino*, the parties had reached a tentative settlement; the district court therefore discontinued the action pending a final settlement, with either party allowed to reopen the case by letter within forty-five days. *Id.* at 265. Plaintiff timely wrote the court that she was firing her lawyer because of a disagreement over the settlement and requested a status conference to discuss trial dates. *Id.* The district court ignored her letter and entered final judgment when the forty-five days had run. The court then denied her Rule 60(b)(1) motion to reopen the judgment. *Id.* This Court reversed, holding that it was abuse of discretion not to correct the obvious factual mistake in not treating plaintiff's pro se letter as a rejection of the settlement. *Id.* at 266.

■ We believe that the plain language of Rule 60, the advisory committee's note to the 1946 amendment, and this Court's action in *Cappillino* all demonstrate that a bankruptcy court has the authority to reopen a judgment based on its own mistake of fact. Given that the bankruptcy court acted well within the time limit to appeal, there is no timeliness issue here. Reviewing the record as a whole, we conclude that the bankruptcy court did not abuse its discretion. Accordingly, we affirm.

We have considered all of Appellant's remaining arguments and find them to be without merit.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court.