In re Barbara C. **LAWRENCE,** Debtor.

No. 97–11258.

United States Bankruptcy Court,
N.D. New York.

March 5, 2007.

John W. Bailey & Associates, P.C. (John W. Bailey, Esq., Cynthia H. Beaudoin, Esq., Of Counsel), Albany, NY, for Movants.

Harvey & Mumford (Brian F. Mumford, Esq., Of Counsel), Albany, NY, Milbank, Tweed, Hadley & McCloy (Douglas W. Henkin, Esq., Of Counsel), New York, NY, Boies, Schiller & Flexner, LLP (George F. Carpinello, Esq., Of Counsel), Albany, NY, for Respondents.

The Ottinger Firm, P.C. (Robert Ottinger, Esq., Of Counsel), New York, NY, for Art Murphy.

Feder, Kaszovitz, Isaacson, Weber, Skala, Bass & Rhine, LLP (Jonathan Honig, Esq., Of Counsel), New York, NY, for Texas Commissioner of Insurance as Receiver of United Republic Insurance Company International Plaza.

E. Lisa Tang, Esq., Delmar, NY, for Barbara Lawrence.

## MEMORANDUM–DECISION, FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

STEPHEN D. GERLING, Chief Judge.

Presently before the Court is a motion filed on December 29, 2006, on behalf of Peter Barton, et al. ("Respondents")[1] pursuant to Rule 26(c) of the Federal Rules of Civil Procedure ("Fed.R.Civ.P."), applicable to the contested matter herein pursuant to Rules 7014 and 7026 of the Federal Rules of Bankruptcy Procedure ("Fed.R.Bankr.P."), requesting a protective order. Specifically, the Respondents request that the Court prohibit Barbara C. Lawrence, Lawrence Group, Inc. ("LGI"), Lawrence United Corp. Insurance Agency of Southern California, Inc., A.W. Lawrence and Company, Lawrence Agency Corp., Lawrence United Corporation, Lawrence Health Care Administrative Services, Inc. ("Debtors"), Global Insurance Company ("Global") and Senate Insurance Company ("Senate") (collectively referred to as the "Movants") from deposing Wendy Whiteman ("Whiteman") and William Ernst ("Ernst").[2] An objection on

---

1. Respondents are comprised of certain individuals, as well as the corporate entities of Mechanical Technology, Inc. ("MTI") and First Albany Companies, Inc. ("First Albany"). The latter two are represented by the law firm of Milbank, Tweed, Hadley & McCloy, LLP. The individual respondents are represented by the law firms of Boies Schiller & Flexner LLP and Harvey and Mumford.

2. The Respondents have also raised arguments concerning whether the Notices to take Oral Deposition of Ernst and Whiteman were proper. Since those notices were for January 5, 2007 and January 18, 2007, respectively, it is the Court's view that the parties should be able to rectify any such problems in renoticing the depositions, depending on the Court's ultimate ruling regarding the motion filed pursuant to Fed.R.Civ.P. 26(c).

behalf of the Movants was filed on January 19, 2007, as well as a supplement to said objection on January 23, 2007. On January 26, 2007, the Respondents filed their reply in further support of their request.

The motion seeking a protective order was originally scheduled to be heard on January 30, 2007, in Utica, New York. However, on the request of the parties, the Court agreed to decide the motion on the papers without the necessity of oral argument. Accordingly, the matter was taken under submission on January 30, 2007.

### JURISDICTIONAL STATEMENT

The Court has core jurisdiction over the parties and subject matter of this contested matter pursuant to 28 U.S.C. §§ 1334, 157(a), (b)(1) and (b)(2)(N) and (O).

### FACTS

As it did in its Memorandum–Decision, Findings of Fact, Conclusions of Law and Order, dated September 19, 2003 ("September 2003 Decision"), as well as its subsequent Decision, dated July 10, 2006 ("July 2006 Decision"), the Court will assume familiarity with the facts as set forth in both of those decisions, as well as those set forth by the United States Court of Appeals for the Second Circuit in *Lawrence v. Wink (In re Lawrence)*, 293 F.3d 615 (2d Cir.2002). Of relevance to the motion now before the Court, and by way of some background information, it notes the following:

Beginning sometime in January 1997, discussions commenced concerning the sale of shares in Mechanical Technology, Inc. ("MTI"). The Debtors filed their chapter 11 petitions on February 28, 1997. Subsequently, further discussions between First Albany and the Movants resumed in the Spring of 1997. On or about June 11, 1997, the parties reached an agreement to sell the stock for $2.25 per share. The sale was ultimately approved by U.S. Bankruptcy Judge John J. Connelly on August 5, 1997, under the terms of a Stock Purchase Agreement, executed on July 25, 1997. On September 9, 1998, the Debtors commenced seven adversary proceedings against the Respondents, alleging that they had fraudulently concealed certain information that should have been disclosed to the Movants during the sale negotiations. The Respondents filed a motion seeking dismissal of the adversary proceedings, which was denied by Judge Connelly on April 1, 1999. On appeal by the Movants, United States District Court Judge David Hurd reversed Judge Connelly's ruling and dismissed the adversary proceedings. The Second Circuit Court of Appeals, on appeal by the Movants, held that Judge Hurd had abused his discretion by declining to recharacterize the claims set forth in the adversary proceedings as motions pursuant to Fed.R.Civ.P. 60(b). Ultimately, the Second Circuit vacated the judgment of the District Court and remanded the matter back to it for consideration of the Movants' allegations of fraud pursuant to Fed.R.Civ.P. 60(b)(3). By decision, dated September 20, 2002, Judge Hurd remanded the matter back to this Court.

On October 18, 2002, the Movants filed a motion pursuant to Fed.R.Civ.P. 60(b)(3) and requested that they be allowed discovery in connection with that motion. After hearing oral argument and allowing the parties an opportunity to file memoranda of law, the Court issued its September 2003 Decision in which it indicated that

> [a] critical issue concerns what information any of the Respondents who were "insiders" of MTI had that was not available to Movants and which they failed to disclose and whether any of that information was material to the price and subsequent increase in the

trading of the stock, such that it should have been disclosed to the Movants before the Stock Purchase Agreement was executed [on July 25, 1997]. * * * [T]he focus of any inquiry should be limited to what nonpublic information Respondents involved in the negotiation process for the sale of the Stock at $2.25 per share had that should have been disclosed to Movants during the process. September 2003 Decision at 16.

On April 21, 2005, the Respondents filed a motion pursuant to Fed.R.Bankr.P. 37 requesting that the Court compel the Movants to respond to certain discovery requests. Movants had taken the position that the Court in its September 2003 Decision had only granted the Movants the right to additional discovery. On May 17, 2005, the Movants filed opposition to the Respondents' motion, as well as a cross-motion for sanctions against the Respondents and requesting that the Court compel the Respondents to respond to certain discovery requests previously made by the Movants. *See* July 2006 Decision at 2. In its July 2006 Decision, the Court reiterated that "[t]he issue for discovery was a very narrow one, namely what non-public information the Respondents who negotiated the price possessed prior to July 25, 1997 that should have been disclosed to the Movants." *Id.* at 7. Ultimately, the Court ordered both parties to respond to the respective discovery requests. *Id.* at 20.

According to the Respondents' counsel, Douglas W. Henkin, Esq. ("Henkin"), he received separate Notices to take Oral Deposition of Whiteman and Ernst, both dated December 7, 2006, on December 11, 2006. *See* Exhibits 6 and 7, attached to Henkin Declaration in Support of Respondents' Motion. It is the Respondents' position that "[b]ecause Ms. Whiteman does not possess any additional information regarding the document collection process,

to require her to submit to a deposition would be a waste of time, effort, and money and would be unduly burdensome to the Respondents and Ms. Whiteman." Respondents' Motion at ¶ 16. In addition, the Respondents assert that the deposition would be outside the scope of discovery permitted in the Court's September 2003 Decision and July 2006 Decision. *Id.*

According to an unsworn declaration executed on December 28, 2006, by Whiteman, she indicates that she was employed by First Albany in April 2003 as a paralegal in its legal department. *See* Declaration of Wendy Whiteman in Support of Respondents' Motion at ¶ 2. She states that she had only a limited role in the collection of documents in this matter. She indicates that this was comprised of working with information technology personnel at First Albany to obtain e-mails from April 1996 through July 25, 1997, which were reviewed "for any indication that an e-mail had anything to do with Mechanical Technology, MTI, the MTI Shares Sale, or Lawrence Group." *Id.* at ¶ 3.

With respect to Ernst, Respondents point out that he is a non-party and since June 1997 has served as Vice President and Chief Scientist for Plug Power, LLC. However, prior to June 1997, he was Business Manager of the Technology Division of MTI, as well as Business Development Manager, Manager for the Kinematic and Advanced Power System Programs and Program Manager for the Automotive Stirling Engine Program at MTI. *See* Exhibit 10, attached to Henkin Declaration. It is Respondents' position that the Movants are attempting

> to enlarge the scope of the "limited discovery" permitted in Rule 60(b)(3) proceedings and which this Court has allowed in this proceeding. Movants apparently wish to depose Dr. Ernst

because they speculate that he may have conveyed information about the development of fuel cells to one or more of the Respondents involved in the negotiation of the MTI Shares Sale. But taking a deposition based on such speculation is nothing more than a fishing expedition, which is clearly prohibited in the contest of the limited discovery permitted in a Rule 60(b)(3) action.

Respondents' Motion at ¶ 21. Respondents point out that Ernst's employment with MTI ceased prior to the sale of the MTI shares of stock. In addition, Respondents contend that the Movants "should exhaust those avenues of discovery [and interrogatory responses from those who negotiated the sale] and demonstrate an actual basis to seek to expand the scope of discovery before being permitted to do so." *Id.* at ¶ 23.[3]

### *DISCUSSION*

■ Fed.R.Civ.P. 26(c), incorporated in Fed.R.Bankr.P. 7026 and made applicable to the matter presently under consideration pursuant to Fed.R.Bankr.P. 9014(c), authorizes the Court to issue "any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . ." upon motion by either a party or by the person from whom discovery is sought.[4] The Rule also allows the Court to set forth any terms and conditions that it believes are just in the event that it denies the motion for a protective order. Whether or not to issue a protective order

is a matter of the Court's discretion. *See Dove v. Atlantic Capital Corp.*, 963 F.2d 15, 19 (2d Cir.1992). The Respondents have the burden of showing that good cause exists for the issuance of such an order. *See Gambale v. Deutsche Bank AG*, 377 F.3d 133, 142 (2d Cir.2004). This requires more than simply conclusory statements. *CSC Consulting, Inc. v. Aluminum.com, Inc.*, 00 Civ. 9513, 2001 WL 546448, *2 (S.D.N.Y. May 22, 2001), citing *Havens v. Metropolitan Life Ins. Co. (In re Akron Beacon Journal)*, No. 94 Civ. 1402, 1995 WL 234710, at *10 (S.D.N.Y. April 20, 1995).

■ Respondents have offered no evidence to support their conclusory assertions that the depositions will annoy, embarrass, oppress or unduly burden both individuals. They argue that it would be a waste of time, effort and money. In addition, they contend that based on the Court's prior cautionary warnings, the Movants are not to engage in a "fishing expedition" in an attempt to confirm whatever suspicions they might have regarding the sale transaction that occurred almost ten years ago. However, it was those very suspicions, based on "circumstantial indications," including the fact that some of the Respondents were insiders of MTI, that convinced the Second Circuit Court of Appeals that the issue of fairness of price needed to be more fully explored. *See Lawrence*, 293 F.3d at 625–26.

In the context of the Movants' Rule 60(b)(3) motion, the Court agreed to allow the Movants limited discovery. In its July 2006 Decision, it indicated that it would

---

3. Notices to take Deposition upon Oral Examination, dated December 7, 2006, were also issued with respect to Alan P. Goldberg, George C. McNamee, and Stephen P. Wink, for depositions on February 6–8, 2007, respectively. *See* Exhibits 8–10, attached to Henkin Declaration. As noted in the Court's July 2006 Decision, these three individuals

were First Albany personnel who were involved in the negotiation process for the sale of the stock. *See* July 2006 Decision at 9.

4. In this case, neither Whiteman nor Ernst have sought a protective order. Instead, the motion is made on behalf of the Respondents.

permit the Movants to inquire about what George McNamee, who served as Chairman of the Board of both MTI and First Albany, knew about the development of the fuel cell technology, at the time he negotiated the Stock Purchase Agreement. *See* July 2006 Decision at 8.

It may well be that the deposition of McNamee, as well as the other individuals who participated in the negotiations, has taken place as scheduled. The Court is not privy to what McNamee recalled concerning negotiations which occurred almost ten years ago. If nonpublic information was made available to him or the others involved in the negotiations, the Court believes that Movants should be able to explore that with Ernst as a potential source for such information. This conclusion is reached after consideration of not only the burden of proof to which the Movants are subject, but also the means by which they may meet that burden. The Court certainly does not want to erect roadblocks in their efforts to get to the truth. Anything that those who were involved in the negotiations might have learned from an outside source may well turn out to be hearsay and inadmissible at trial unless the source is allowed to testify. The Court believes it is essential that Movants be given an opportunity, prior to their "day in court," to examine Ernst to determine the extent of any discussions, that he may or may not have had with those individuals involved in the negotiations, which may have influenced those negotiations with respect to the price of the stock. Such negotiations began apparently in January 1997 at a time when Ernst was employed by MTI. The fact that he left its employment in June 1997 prior to the actual execution of the Stock Purchase Agreement does not eliminate the possibility that he may have provided nonpublic information to some of the Respondents, either before or after his joining Plug Power.

Under the circumstances, the Court does not view it as a "fishing expedition." Rather, it may serve to clear some of the cobwebs in the minds of those involved in the process some ten years ago. Accordingly, the Court will allow the deposition of Ernst to go forward, provided a proper and timely re-notice is given him as required by the Federal Rules of Civil Procedure. However, the Court wishes to emphasize that the factual inquiry of any such deposition is to be limited. Movants may question Ernst regarding conversations or communications he may have had with any of the Respondents, including those who negotiated the sale price, prior to July 25, 1997, and any opinions he may have rendered concerning the fuel cell technology and its commercial development and future viability at that time, including information not available to the general public. However, the Court would caution Movants that its prior rulings addressed to such matters, including but not limited to the identification of engineers and scientists involved in the project and the flow of information between individuals at Plug Power and MTI, as well as confidential specifics involving the development of the technology, still apply.

This process must come to a conclusion. The Court will no longer tolerate efforts to obtain discovery beyond the parameters it has set. This matter was first brought before the Court in October 2002, approximately four and a half years ago. At this stage in the proceedings, the Court believes that the parties and their attorneys are quite familiar with those limitations, and there should be no need for the Court to have to address every possible scenario and where it falls within those limitations. The Court previously found that the Movants had presented a "colorable claim" of fraud based on "the fact that some, if not all, of the Respondents involved in the sale

were 'insiders,' who had a duty to disclose material information to the Movants in connection with the negotiations for the sale of the stock of MTI." September 2003 Decision at 16. However, in the context of a Rule 60(b)(3) motion, the Court does not believe it appropriate to allow Movants to continue turning over stones in hopes that something may turn up to supplement the "circumstantial indications" on which their motion was based. If, as the Respondents suggest, there is no "holy grail" to be discovered among the stones, then perhaps it is time that the Movants consider ending their quest. However, the Court is certainly willing to afford them an opportunity to "turn over one more stone" by allowing the deposition of Ernst to go forward.

As far as the deposition of Whiteman is concerned, the Respondents argue that it would be unduly burdensome to them and Whiteman. In addition, they assert that the deposition is outside of the scope of discovery that the Court has indicated was appropriate. The Court is somewhat at a loss to understand what it is that the Movants hope to accomplish with said deposition. However, that is certainly not a basis for issuing a protective order. The conclusory statements alleging a waste of time, effort and money do not establish cause to issue such an order. Nor does the Court agree that information concerning the procedure used to obtain any e-mails to or from individuals at First Albany concerning MTI and the proposed purchase of stock in MTI is beyond the limits set by the Court with respect to discovery. Movants are certainly entitled to explore the approach taken in responding to their discovery requests and their efforts to determine whether there was nonpublic information concerning MTI's efforts in the area of fuel cell technology to which the Respondents were privy prior to the execution of the Stock Purchase Agreement on July 25, 1997, that may have impacted on the fairness of the negotiated price.

Based on the foregoing, it is hereby

ORDERED that the motion of the Respondents, seeking a protective order with respect to the depositions of Ernst and Whiteman, is denied; it is further

ORDERED that both Whiteman and Ernst be re-noticed for deposition in accordance with the Federal Rules of Civil Procedure and the Federal Rules of Bankruptcy Procedure.