**In re Artie Bevis WILLIAMS, Debtor.**

**James LANDING, Plaintiff,**

v.

**Artie Bevis WILLIAMS, Defendant.**

**Bankruptcy No. 480–00157.
Adv. No. 480–0045.**

United States Bankruptcy Court,
S. D. Georgia,
Savannah Division.

March 9, 1981.

George M. Hubbard, Savannah, Ga., for plaintiff.

David L. Cavender, Hinesville, Ga., for defendant.

HUGH ROBINSON, Bankruptcy Judge.

## ORDER

The above-styled adversary proceeding was filed in the Southern District of Georgia, Savannah Division on June 13, 1980. Finding that he had a conflict of interest, the Honorable Judge Herman W. Coolidge voluntarily disqualified himself and transferred said proceeding to the Northern District of Georgia whereupon it was assigned to the undersigned bankruptcy judge. This case involves a challenge to the dischargeability of a debt owed by the debtor to the plaintiff. Documentary evidence and oral testimony were presented to the Court at the duly scheduled hearing held August 21, 1980 in Savannah, Georgia. Having considered the evidence adduced at trial, the arguments of the parties and the pleadings on file the Court makes the following decision.

## FINDINGS OF FACT

Artie Bevis Williams, ("Defendant"), is the former owner of a house located in Savannah, Georgia. The house was purchased by Defendant in about 1958 and was owned by Defendant for about 18 years. During this period of time Defendant made two additions to the house. A room was added to the side of the house and was used as a beauty parlor by Defendant's wife until her ill health forced her to discontinue the business. An addition was also made to the back of the house which consisted of a dining room-den and two bathrooms. Defendant did most of the work on the side addition with some assistance from his brother, his son-in-law and friends. Only the cutting and installation of the rafters were contracted out. As with the side addition, Defendant did most of the work on the back addition with the assistance of his son, his brother-in-law and friends. Only the flooring and electrical work were contracted out. Defendant did virtually all of the roofing on the back addition. During the time Defendant owned the house, it was regularly sprayed with pesticides by one Ollie Smith.

In about 1975 Defendant reshingled the roof of the back addition with shingles his son-in-law had given him. The house was put on the market in 1977 and was sold to James E. Landing, ("Plaintiff"). In connection with the sale of this house Joseph H.

Johnson d/b/a J. H. Johnson & Son Exterminating Company, ("Johnson") performed a visual inspection of the house required as a condition for obtaining a VA or FHA loan. As a result of this inspection Johnson guaranteed that the house was clear of termite infestation or damage. Plaintiff entered into possession of the house on October 3, 1977.

Shortly after moving into the house, Plaintiff discovered a leak in the roof close to the back door. Several months later after several unsuccessful attempts at repairing the leak with tar Plaintiff removed the roofing from the back addition. Underneath the shingles he discovered sheets of tin, linoleum, asbestos shingles and plywood. These materials were covering a large hole in the roof. Plaintiff also discovered rotted wood behind the paneling in one of the bathrooms located in the back addition. The damaged wood had been shored up by another piece of wood.

Plaintiff brought suit against Defendant and Johnson in the Superior Court of Chatham County. Two counts of the complaint were dismissed leaving one count charging Defendant with wilful and malicious misrepresentation of the condition of the house and concealment of the condition of said residence and one count charging Johnson with negligence in the performance of the visual inspection. Plaintiff sought $11,676.00 in actual damages and $50,000.00 in punitive damages from Defendant and $11,676.00 in actual damages and $25,000.00 in punitive damages from Johnson. A jury trial was held resulting in a verdict against both defendants. The jury found Plaintiff's actual damages to be $8,500.00. No punitive damages were assessed against either defendant. This decision was appealed to the Georgia Court of Appeals and was affirmed.

Defendant filed a petition under Chapter 7 of Title 11 of the United States Code. Plaintiff thereafter commenced this adversary proceeding to determine the dischargeability of the judgment debt owed by Defendant.[1] It is alleged that the debt is nondischargeable under 11 U.S.C. §§ 523(a)(2)(A) and 523(a)(6).

## APPLICABLE LAW

*Objection Under 11 U.S.C. § 523(a)(2)(A)*

Section 523(a)(2)(A) of the Bankruptcy Act provides:

"(a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—

(2) for obtaining money, property, services, or an extension, renewal, or refinance of credit, by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition; . . ."

Plaintiff contends that Defendant obtained money for the purchase of the house by falsely representing that the house was made of sound material and was well built. Defendant could not remember making any representations to Plaintiff concerning the structural soundness of the house. However, he did not absolutely refute the assertion that such representations had been made.

The evidence shows that there was extensive roof damage in the area of the back addition and wood damage in the wall of a bathroom in the back addition. Although Plaintiff steadfastly maintains that the damage was caused by termites neither Plaintiff nor Defendant had ever seen swarming insects around the house and neither party was sure if he could identify a termite if he saw one. However, it is not necessary to determine the exact cause of the damage for the issue before the Court is whether Defendant was aware of the damage at the time he sold the house and whether, having such knowledge, he represented to Plaintiff that the house was in sound condition.

---

1. Johnson had also filed a complaint objecting to the discharge of the judgment debt. The case is styled Joseph H. Johnson, d/b/a J. H. Johnson & Son Exterminating Company v. Artie Williams and James L. Drake, Jr., Trustee, Adversary No. 480–0047.

Defendant built the roof on the back addition and reshingled this area in about 1975. At the hearing Defendant explained the reason for reshingling this part of the roof. Defendant was given some shingles by his son-in-law which were not of the same color as those already on his house. Desiring to change the color of his roof, Defendant used the shingles to reshingle the back addition of the house. With regard to the wall of the bathroom located in the back addition, Defendant testified that the paneling had not been removed since the time of its installation. From observing Defendant's general demeanor in the courtroom the Court is convinced that Defendant testified truthfully and in good faith.

There is no indication that Defendant was aware of the damaged condition of the roof and the bathroom wall at the time the house was sold. Defendant testified that he had never seen any wood damage in the house. That the damage was not readily apparent is evidenced by the fact that after performing a visual inspection of the house Johnson guaranteed that there was no termite damage or infestation. After reviewing the evidence and the testimony offered at the hearing, the Court concludes that Defendant was not aware of the damaged condition of the house when he sold it to Plaintiff.

A false representation or false pretense under Section 523(a)(2)(A) must be of a kind involving moral turpitude or intentional wrong. Fraud implied in law which may exist without imputation of bad faith or immorality is sufficient. 3 *Collier on Bankruptcy* (15th Edition), ¶ 523.08[4], p. 523–39. In the state court action brought by Plaintiff against Defendant for wilful and malicious misrepresentation and concealment of the condition of the house the jury found in favor of Plaintiff.[2] However, it is significant that the jury did not access punitive damages against Defendant. After careful consideration of the evidence the Court concludes that no false represen-

tation of a kind involving moral turpitude was made by Defendant to Plaintiff.

*Objection Based on 11 U.S.C. 523(a)(6)*

Section 523(a)(6) of the Bankruptcy Code reads:

(a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity; . . ."

This section excepts from a debtor's general discharge any debt incurred as a result of a wrongful act done intentionally which necessarily produced harm and is without just cause or excuse. 3 *Collier on Bankruptcy* (15th Edition) ¶ 523.16[1], p. 523–115.

Plaintiff contends that Defendant wilfully and maliciously injured Plaintiff's property. There is no evidence whatsoever in this case that Defendant intentionally caused damage to the house he sold to Plaintiff. The Court concludes that Plaintiff's objection based on 11 U.S.C. § 523(a)(6) is without merit.

### CONCLUSIONS OF LAW

1. Defendant made no false representations of a kind involving moral turpitude to Plaintiff concerning the condition of the house sold to Plaintiff.

2. Defendant did not wilfully and maliciously injure the house he sold to Plaintiff. It is therefore

ORDERED that the judgment debt owed by Defendant to Plaintiff shall be and same is hereby determined dischargeable.

2. Plaintiff has not argued that the state court decision has collateral estoppel effect in this Court. For a discussion of the limited applica-

tion this doctrine has in suits to determine dischargeability see *Franks v. Thomason*, 4 B.R. 814 (N.D.Ga.1980).