05-6622-bk
Adelphia Bus. Solutions, Inc. v. Abnos

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term 2006

(Argued: October 11, 2006      Decided: April 13, 2007)

Docket No. 05-6622-bk

------------------------------------------------------x

ADELPHIA BUSINESS SOLUTIONS, INC.,

Debtor-Appellee,

-- v. --

NICHOLAS ABNOS,

Appellant.

------------------------------------------------------x

B e f o r e :  JACOBS, Chief Judge, WALKER, Circuit Judge, and
O'CONNOR,[*] Associate Justice Retired.

Appeal from a judgment of the United States District Court for the Southern District of New York (Alvin K. Hellerstein, Judge), affirming the bankruptcy court's retroactive approval of the decision of debtor-appellee Adelphia Business Solutions, Inc. to reject under 11 U.S.C. § 365(a) an unexpired, nonresidential lease with lessor Nicholas Abnos.  On appeal, Abnos argues that

---

[*] The Honorable Sandra Day O'Connor, Associate Justice (Retired) of Supreme Court of the United States, sitting by designation.

the bankruptcy court lacked equitable authority to make its rejection order retroactive or, should we find that it had that power, abused its discretion in doing so.

AFFIRMED.

MICHAEL P. RICHMAN, Foley & Lardner LLP, New York, New York, for Appellant.

JUDY G.Z. LIU, Weil, Gotshal & Manges LLP, New York, New York, for Debtor-Appellee.

JOHN M. WALKER, JR., Circuit Judge:

In this appeal from a November 15, 2005 judgment of the United States District Court for the Southern District of New York (Alvin K. Hellerstein, Judge), a bankruptcy court granted a debtor's motion to reject an unexpired commercial lease pursuant to 11 U.S.C. § 365(a) nunc pro tunc to a date nearly three years earlier when it first told the parties of its intention to make the order retroactive. Under the circumstances of this case, we hold that the bankruptcy court acted within its discretion.

**BACKGROUND**

Nicholas Abnos owns the "Historic Firestone Building," located in Kansas City, Missouri. On September 18, 2001, Adelphia Business Solutions, Inc. ("Adelphia") entered into two companion leases for the Firestone Building. One lease pertained to two floors of the Firestone Building (the "Building Lease"); the other, to an annex of the same property (the "Annex Lease"). On March 27, 2002, Adelphia commenced voluntary proceedings under

Chapter 11 of the Bankruptcy Code. On May 15, 2002, Adelphia filed two motions: one seeking authorization to reject certain unexpired leases of nonresidential real property pursuant to 11 U.S.C. § 365(a), and the other seeking an extension of the deadline for assuming or rejecting other unexpired leases of nonresidential real property pursuant to 11 U.S.C. § 365(d)(4). In the motions, Adelphia only identified the address of the Firestone Building, leaving unclear whether it was referring to the Building Lease or Annex Lease.

On May 29, 2002, a hearing was held before the bankruptcy court (Robert E. Gerber, Bankruptcy Judge). At around the same time, Adelphia vacated the premises covered by the Building Lease. At the hearing, Adelphia explained that it sought (1) to reject the Building Lease and (2) extend the time for rejection or assumption of the Annex Lease. Abnos objected, arguing that the Building Lease and Annex Lease were actually a single lease that had to be treated as a whole. The bankruptcy court, declining to authorize the rejection of the Building Lease at that time, decided to review the lease agreements and pleadings to determine whether it could rule on the issue of whether the two leases had to be treated as one for rejection purposes without a further evidentiary hearing. The bankruptcy court authorized the rejection of all the other leases listed in the motion.

During the hearing, the bankruptcy judge made oral statements indicating that if he approved the rejection of the Building Lease, his approval would be effective as of that hearing date. The bankruptcy judge said, "If [Adelphia is] right . . . justice would say that their clock should stop today because they at least tried to reject today." The judge also said:

> What I am of a mind to do is to deal with this as quickly as I can . . . and if the Debtor is right, I will tell you now I will stop their postpetition clock today, and if they're wrong, then you can collect from them for the postpetition rent until we can get this thing sorted out . . . . That's what I'm inclined to do to balance your needs for procedural due process and to give [Adelphia] what it tried to achieve, which is that if [Adelphia] is right . . . to stop their postpetition rent clock on the [Building Lease] starting today.

The bankruptcy court relieved Adelphia from its rent obligation on the Building Lease pending its decision. The bankruptcy judge also said, "I will try to give you folks a decision as quickly as possible." When Adelphia's counsel asked if it should keep the Building Lease rent in escrow, the judge responded, "[I]f I get you the answer in a couple of weeks or less, you don't need that in escrow, do you?"

Regrettably, the pending motion to reject languished for the next two years. On November 26, 2003, Abnos filed a claim with Adelphia for administrative expenses for postpetition rent but did not notify the bankruptcy court. Neither party took any

-4-

action on the pending rejection motion until June 2004, when Abnos raised its status with the bankruptcy court. On July 1, 2004, the bankruptcy court requested, and one month later received, supplemental memoranda on the issue of whether the Building Lease and Annex Lease constituted a single lease. In January 2005, Abnos again asked the bankruptcy court about the status of the motion.

Finally, on March 10, 2005 - more than thirty-three months after the May 29, 2002 hearing - the bankruptcy court entered an order that found that the Building Lease and Annex Lease were separate contracts and authorized Adelphia to reject the former and assume the latter. The order did not specify whether it had retroactive effect.

On April 11, 2005, after the time for appeal of the order had elapsed, Abnos moved for an order directing Adelphia to pay $676,918.16 in administrative expenses under § 365(d)(3), consisting of the unpaid rent under the Building Lease up to the bankruptcy court's approval of rejection on March 10, 2005. The bankruptcy court noted that Abnos had been justified in filing the objection to the rejection motion because whether the two leases constituted a single lease was "fairly debatable." On May 29, 2005, however, the bankruptcy court ruled that its March 10, 2005 decision to grant the motion to reject was retroactive to May 29, 2002. The bankruptcy judge acknowledged that the

rejection motion "fell off [his] radar screen, as it apparently fell off the radar screens of the two sides in this dispute as well." He concluded, however, that he had issued a "final determination" on May 29, 2002 that if he ruled in Adelphia's favor, the Building Lease rejection would be retroactive to that date and that nothing had transpired since then to justify its alteration. The bankruptcy court reached this decision based on several undisputed facts: It notified the parties on May 29, 2002 of its "final determination" on retroactivity; Abnos did not object to that ruling; Adelphia surrendered the premises on or about the date of the hearing; while neither party acted on the pending motion, Abnos made no effort to alert the bankruptcy court of the pendency of the rejection motion until June 2004 or raise concerns about the timing of the approval until April 2005; and, finally, Abnos did not attempt to relet the vacant premises despite "little risk that [Adelphia] would have objected," "little chance" that Abnos would have thereby waived his objection to rejection, and "no chance whatever" of any forfeiture of rights "if he had explained his needs and concerns to the Court."

On November 8, 2005, the District Court for the Southern District of New York found no abuse of discretion and affirmed the bankruptcy court's decision. The district court found neither party at fault for the delay. Implicitly rejecting the bankruptcy court's view that the May 29, 2002 retroactivity

pronouncement was a "final determination," the district court nonetheless held that those statements put Abnos on "clear notice that the bankruptcy judge, if he decided against Abnos, would more likely than not, and maybe certainly, use the May 29 day for stopping the clock." With that in mind and noting that the "debtor had quit the premises," the district court concluded that the risk should fall on the landlord because it was "more incumbent on the landlord to seek out a new tenant or to obtain permission to rent to a new tenant."

Abnos timely appealed.

## DISCUSSION

Abnos advances two principal arguments. First, he argues that a bankruptcy court lacks equitable authority to make retroactive its order approving a debtor's rejection of an unexpired nonresidential lease. Second, he contends that, even if the bankruptcy court has this power, its exercise was an abuse of discretion in this case. After initially reviewing the mechanics behind lease rejection under 11 U.S.C. § 365, we will address each argument in turn.

**I.  Rejection of Leases Under § 365 of the Bankruptcy Code**

During a Chapter 11 reorganization, 11 U.S.C. § 365(a) provides that "the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." As a debtor in possession, Adelphia has essentially the

same rights, powers, and duties as a trustee.  See 11 U.S.C. §§ 1107(a), 1108; see also Smart World Techs., LLC v. Juno Online Servs., Inc. (In re Smart World Techs., LLC), 423 F.3d 166, 174 n.10 (2d Cir. 2005).

Before rejection or assumption, the debtor in possession has certain obligations.  Section 365(d)(3) states:

> The trustee shall timely perform all the obligations of the debtor, except those specified in section 365(b)(2), arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title.

11 U.S.C. § 365(d)(3) (emphasis added).  This subsection therefore requires continued performance under a lease until it is assumed or rejected.  Liona Corp. v. PCH Assocs. (In re PCH Assocs.), 804 F.2d 193, 199 (2d Cir. 1986); Authentic Hansom Cabs, Ltd. v. Nisselson (In re Fayolle), 300 B.R. 843, 849 n.4 (Bankr. S.D.N.Y. 2003).

The Bankruptcy Code imposes a time limit on the debtor in possession's ability to assume an unexpired lease.  Section 365(d)(4)(A) states:

> Subject to subparagraph (B), an unexpired lease of nonresidential real property under which the debtor is the lessee shall be deemed rejected, and the trustee shall immediately surrender that nonresidential real property to the lessor, if the trustee does not assume or reject the unexpired lease by the earlier of--
> (i) the date that is 120 days after the date of the order for relief; or
> (ii) the date of the entry of an order confirming a plan.

-8-

11 U.S.C. § 365(d)(4)(A).  The bankruptcy court may extend the time limit under certain conditions.  <u>See</u> 11 U.S.C. § 365(d)(4)(B).

Assumption of an unexpired lease by a debtor entitles the lessor to assert its claims on a priority basis.  <u>Frito-Lay, Inc. v. LTV Steel Co. (In re Chateaugay Corp.)</u>, 10 F.3d 944, 955 (2d Cir. 1993).  Rejection of an unexpired lease, on the other hand, is treated as a breach of the lease, <u>see</u> § 365(g)(1); <u>Stoltz v. Brattleboro Hous. Auth. (In re Stoltz)</u>, 315 F.3d 80, 86 (2d Cir. 2002); <u>Med. Malpractice Ins. Ass'n v. Hirsch (In re Lavigne)</u>, 114 F.3d 379, 387 (2d Cir. 1997), allowing the lessor to seek damages as a pre-petition claim.  <u>Lavigne</u>, 114 F.3d at 387.  In such a case, the lessor may seek allowance of its claim under 11 U.S.C. § 502(g) with the same priority as a general unsecured creditor.  <u>See</u> 11 U.S.C. §§ 365(g), 502(g); <u>N.L.R.B. v. Bildisco & Bildisco</u>, 465 U.S. 513, 531 (1984) ("Damages on the contract that result from the rejection of an executory contract . . . must be administered through bankruptcy and receive the priority provided general unsecured creditors.").

From the foregoing, the importance of the lease rejection's effective date to the parties is obvious.  Prior to that date, Abnos is entitled to full administrative rent on a priority basis; after that date, Abnos can only seek rent as an unsecured creditor through a subordinated claim for damages, with the

-9-

attendant risk that he will receive only a fraction of the rent due under the lease.

**II.  The Bankruptcy Court's Equitable Authority**

Abnos contends that the bankruptcy court lacked equitable authority to make retroactive its approval of rejection under 11 U.S.C. § 365(a).  Abnos first argues that such equitable authority would contravene Congress's intent behind § 365(d)(3): to assure landlords of post-petition, pre-rejection rent until court-approved rejection.  He further argues that this sort of equitable power has no statutory authorization and is not within the equitable authority conferred on the courts by the Judiciary Act of 1789, 1 Stat. 73 (1789).  For the latter point, Abnos relies upon Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc., 527 U.S. 308 (1999), in which the Supreme Court held that a preliminary injunction issued under Fed. R. Civ. P. 65 had to be within the district court's equitable authority under the Judiciary Act of 1789, which conveyed only "an authority to administer in equity suits the principles of the system of judicial remedies which had been devised and was being administered by the English Court of Chancery at the time of separation of the two countries."  Id. at 318-19 (internal quotation marks omitted).

We have not ruled on the existence or scope of a bankruptcy court's equitable authority to order retroactive approval of rejection under § 365, and there is no need for us to do so here.

-10-

The parties litigated this case in the district court on the assumption that such authority existed: Abnos did not raise this issue below in his brief and conceded at oral argument before the district court that the bankruptcy court possessed the relevant equitable power. In general, a federal appellate court refrains from passing on issues not raised below. See Pease v. Hartford Life Accident Ins. Co., 449 F.3d 435, 446 (2d Cir. 2006). We are more likely to exercise our discretion to consider such issues when, as here, they are purely legal and require no additional fact finding. See Official Comm. of the Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP, 322 F.3d 147, 159 (2d Cir. 2003); Baker v. Dorfman, 239 F.3d 415, 420 (2d Cir. 2000). However, we decline to exercise our discretion; Abnos affirmatively conceded the issue in the district court, and his failure to raise the issue in the bankruptcy court deprived that court of the opportunity to fashion relief such that no court would have to decide the question in this dispute. Therefore, we will assume, without deciding, that the bankruptcy court had equitable authority to make its order retroactive.[1]

---

[1] We note that two of our sister circuits have held that the bankruptcy courts have this equitable authority, though without considering Grupo Mexicano, see Pacific Shores Dev., LLC v. At Home Corp. (In re At Home Corp.), 392 F.3d 1064, 1071 (9th Cir. 2004); Thinking Machs. Corp. v. Mellon Fin. Servs. Corp. (In re Thinking Machs. Corp.), 67 F.3d 1021, 1028 (1st Cir. 1995), and another has suggested that bankruptcy courts have this power, see EOP-Colonnade of Dallas Ltd. P'ship v. Faulkner (In re Stronebridge Techs., Inc.), 430 F.3d 260, 273 (5th Cir. 2005). The Southern District of New York has held that a bankruptcy

-11-

**III. Whether the Bankruptcy Court Abused Its Discretion**

In an appeal from a district court's review of a bankruptcy court's decision, we review the decision of the bankruptcy court independently, accepting its factual findings unless they are clearly erroneous and reviewing its conclusions of law de novo. See Ball v. A.O. Smith Corp., 451 F.3d 66, 69 (2d Cir. 2006). Assuming that the bankruptcy court had equitable authority to make its approval of rejection retroactive, we review the exercise of that equitable authority only for abuse of discretion. See Abrahamson v. Bd. of Educ., 374 F.3d 66, 76 (2d Cir. 2004) ("We review a district court's fashioning of equitable relief for abuse of discretion."); cf. Cushman & Wakefield of Conn., Inc. v. Keren Ltd. P'ship (In re Keren Ltd. P'ship), 189 F.3d 86, 87-88 (2d Cir. 1999) (per curiam) (reviewing nunc pro tunc approval of professionals seeking to render services to a bankruptcy estate under 11 U.S.C. § 327(a) for abuse of discretion). We thus follow our sister circuits, which also review these retroactivity decisions for abuse of discretion. See At Home, 392 F.3d at 1072; Thinking Machs., 67 F.3d at 1028.

The procedural posture of this case presents us with an unusual situation: While we do not decide whether the bankruptcy court has equitable authority to make its approval of the lease

court may give retroactive effect to its approval of rejection under § 365 at least where there is "unnecessary delay caused by the creditor." See Constant Ltd. P'ship v. Jamesway Corp. (In re Jamesway Corp.), 179 B.R. 33, 39 (S.D.N.Y. 1995).

-12-

rejection retroactive, we still must determine if the bankruptcy court abused its discretion in exercising a power that may not exist. We hesitate to fashion general rules guiding the exercise of a power that may be unfounded. Nonetheless, to provide guidance in future decisions, we explore the contours of this purported power based upon the decisions of other courts that have found it to exist or assumed its existence.

**A[2]**

The fault for the 33-month delay in deciding the rejection motion principally rested with the bankruptcy court (as it candidly conceded). However, the parties were not blameless: They remained quiescent even though they knew that the premises were vacant and the losses were accruing for someone. In assigning the risk of loss as an equitable matter, the bankruptcy court properly considered how the parties conducted themselves in the circumstances of this case. While neither party was more at fault than the other for the delay in deciding the rejection motion, we do not believe that the bankruptcy court abused its discretion in finding that the equities tipped in favor of the May 29, 2002 effective date.

Under the assumption that it could make its order retroactive, the bankruptcy court's pronouncement at the May 29,

---

[2] Chief Judge Jacobs deems that the grounds discussed in Section III.A are sufficient for affirmance and does not subscribe to Section III.B.

2002 hearing put Abnos on clear notice of the possibility that an order approving rejection would be retroactive to the hearing date. We need not resolve the parties' dispute over whether the May 29, 2002 pronouncement somehow bound Abnos; at the very least, it notified Abnos of the proposed effective date and of the consequent risk to him – a risk that increased as time passed without any decision on the rejection motion.

**B**

The bankruptcy court also properly considered that Adelphia had vacated the premises and thereby provided Abnos with the opportunity to lease the premises to another tenant, which he did not try to do. By reletting, Abnos could have mitigated the risk of which he was on notice.[3] This factor weighs in favor of

---

[3] We also note that if the bankruptcy court has equitable authority to make its approval of rejection retroactive, the landlord's opportunity to relet arguably furthers § 365(d)'s goal of, inter alia, preventing needless vacancies of real property. The duties imposed by § 365(d)(3) (requiring the debtor to perform his contractual obligations until rejection) and § 365(d)(4) (setting time limits on the debtor's ability to assume or reject) arose from the "Shopping Center Bankruptcy Amendments" of the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub. L. No. 98-353, 98 Stat. 333 (1984). Through these amendments, Congress sought to "remedy the long-term vacancy or partial operation of space by a bankrupt tenant." At Home, 392 F.3d at 1068 (citing 130 Cong. Rec. S8891 (1984) (statement of Sen. Hatch), reprinted in 1984 U.S.C.C.A.N. at 598). Congress wanted to mitigate the problems faced by landlords and other tenants in debtors' buildings under the prior scheme: Landlords lost money because they could not evict the debtors but had to provide them with the properties and related services, and debtors' co-tenants lost money through decreased traffic and were required to subsidize the debtors' shares of common area charges. Id. (citing 130 Cong. Rec. S8891 (1984) (statement of Sen. Hatch), reprinted in 1984 U.S.C.C.A.N. 590, 598-99). The

granting retroactive relief here. See At Home, 392 F.3d at 1074 (holding that a bankruptcy court did not abuse its discretion in considering that the tenant vacated the leased premises). Compare In re Fleming Cos., 304 B.R. 85, 96 (Bankr. D. Del. 2003) (permitting retroactivity where premises were surrendered), and In re Amber's Stores, 193 B.R. 819, 827 (Bankr. N.D. Tex. 1996) (same), with In re Chi-Chi's, Inc., 305 B.R. 396, 399 (Bankr. D. Del. 2004) (declining to order retroactivity when the premises were not surrendered), and In re Cafeteria Operators, L.P., 299 B.R. 384, 394 (Bankr. N.D. Tex. 2003) (ordering retroactive rejection of leases of vacated premises but not for occupied premises).

Abnos argues that he could not control when the bankruptcy court would issue its ruling and that he was barred from unilaterally reletting the premises because 11 U.S.C. § 362(a)(3) provides an automatic stay of "any act to obtain possession of the property of the estate or of property from the estate." See also Smart World Techs., 423 F.3d at 174; Roslyn Savings Bank v. Comcoach Corp. (In re Comcoach Corp.), 698 F.2d 571, 573 (2d Cir. 1983). However, Abnos very likely could have relet by requesting court-ordered relief from the stay. See 3 Collier on Bankruptcy

---

amendments required that the debtor promptly determine what to do with the unexpired lease. Id. at 1069. A bankruptcy court might further § 365's legislative purpose by using the spur of retroactivity to motivate landlords to relet.

-15-

¶ 365.09[4] (proposing that bankruptcy courts grant relief from the automatic stay to allow a landlord to proceed in state court to regain possession of the premises); cf. In re Ames Dep't Stores, Inc., 306 B.R. 43, 52-53 (Bankr. S.D.N.Y. 2004) (stating in dicta that if a debtor continued occupancy after rejection, the landlord might be entitled to relief from the stay to complete eviction).

Abnos also argues that reletting would have been inconsistent with his opposition to the rejection motion. But Abnos never presented this dilemma (if it is a dilemma) to the bankruptcy court, which could have fashioned relief pending the delay or issued its ruling more promptly.

We reject Abnos' argument that the debtor must bear the risk of delay in prosecuting its motion for approval of rejection unless the landlord was at fault for the delay or acted in bad faith. A bankruptcy judge "must not be shackled with unnecessarily rigid rules when exercising the undoubtedly broad administrative power granted him under the Code," but rather "must have substantial freedom to tailor his orders to meet differing circumstances." Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063, 1069 (2d Cir. 1983); see also At Home, 392 F.3d at 1075 ("We likewise eschew any attempt to limit the factors a bankruptcy court may consider when balancing the equities in a particular case."). Section 105(a) grants broad equitable power to the bankruptcy courts to carry

-16-

out the provisions of the Bankruptcy Code so long as that power is exercised within the confines of the Bankruptcy Code. See 11 U.S.C. § 105(a); Smart World Techs., 423 F.3d at 183-84. Assuming that the bankruptcy courts have the authority to issue orders like the one at issue, we must give them generous latitude to shape equitable relief under § 365, and see no reason to make landlord culpability a requirement for retroactivity. We note that numerous lower court decisions have made orders retroactive without considering whether the landlord acted in bad faith. See, e.g., Stonebriar Mall Ltd. P'ship v. CCI Wireless, LLC (In re CCI Wireless, LLC), 297 B.R. 133, 140 (D. Colo. 2003) (holding that although the lessor did not cause delay, the bankruptcy court did not abuse its discretion in ordering retroactive relief where the debtor had not been in possession of leased premises since before filing for Chapter 11 protection); Amber's Stores, 193 B.R. at 827.

We are also unpersuaded by the proposition that because Abnos had no duty to mitigate his losses from breach of the lease under Missouri law, see JCBC, LLC v. Rollstock, Inc., 22 S.W.3d 197, 200-01 (Mo. Ct. App. 2000) – which we assume governs the lease – the bankruptcy court should not have considered whether he could relet. Abnos was certainly free not to mitigate his damages, and under Missouri law he may be entitled to damages from the breach occasioned by the rejection without any penalty for not mitigating his losses. This rule of contract law,

-17-

however, is beside the point; it does not affect the bankruptcy court's equitable consideration of the practical effect of Abnos' ability to protect himself by reletting the premises. See <u>At Home</u>, 392 F.3d at 1074 ("Nothing in the statute, in the precedents, or in logic precludes the bankruptcy court from considering the practical effects of a tenant's lack of occupancy when balancing the equities in the context of § 365(d)(3).").

**CONCLUSION**

For the foregoing reasons, the judgment of the district court is AFFIRMED.