24-1354-bk (L)
*In re: Sears Holdings Corp.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 16th day of December, two thousand twenty-four.

PRESENT:
> SUSAN L. CARNEY,
> JOSEPH F. BIANCO,
> WILLIAM J. NARDINI,
> > *Circuit Judges.*

_____

IN RE: SEARS HOLDINGS CORPORATION,

> *Debtor.*


_____

MOAC MALL HOLDINGS LLC,

> *Appellant-Cross-Appellee,*

   v.                                                          24-1354-bk
                                                               24-1515-bk

TRANSFORM HOLDCO LLC,

> *Appellee-Cross-Appellant,*

SRZ LIQUIDATING TRUSTEE, SUCCESSOR

IN INTEREST SEARS HOLDINGS CORPORATION,

*Trustee-Appellee.*

_____

| | |
|---|---|
| FOR APPELLANT-CROSS-APPELLEE: | DOUGLAS H. HALLWARD-DRIEMEIER (Andrew G. Devore and Gregg M. Galardi*, on the brief*), Ropes & Gray LLP, New York, New York, and Washington, District of Columbia. |
| FOR APPELLEE-CROSS-APPELLANT: | G. ERIC BRUNSTAD, JR. (Amy R. Wolf and Michael H. Cassel, Wachtell, Lipton, Rosen & Katz, New York, New York, *on the brief*), Dechert LLP, New York, New York. |
| FOR TRUSTEE-APPELLEE: | GREGORY SILBERT (Garrett A. Fail, *on the brief*), Weil, Gotshal & Manges LLP, New York, New York. |

Appeal from a judgment of the United States District Court for the Southern District of New York (Colleen McMahon, *Judge*).

**UPON DUE CONSIDERATION**, **IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court, entered on May 3, 2024, is **AFFIRMED**.

Appellant-Cross-Appellee MOAC Mall Holdings LLC ("MOAC") appeals from the district court's decision denying its bankruptcy appeal as moot for lack of a remedy because, although the district court vacated the assignment and assumption of the lease at issue to Appellee-Cross-Appellant Transform Holdco LLC ("Transform"), it determined that the lease would not revert to MOAC, the lessor, pursuant to 11 U.S.C. § 365(d)(4), and that MOAC had no available alternative remedy.  *See generally In re Sears Holdings Corp.*, 661 B.R. 298 (S.D.N.Y. 2024) ("*Sears VI*").  MOAC principally argues on appeal that the district court erred

2

by: (1) concluding that Section 365(d)(4) did not govern the lease; (2) determining that Transform and Sears Holdings Corporation and its affiliated debtors ("Sears") neither waived nor forfeited the argument that Section 365(d)(4) did not apply here; and (3) returning the lease to Appellee SRZ Liquidating Trustee ("Liquidating Trustee"), the successor-in-interest to Sears, outside of the assumption procedures set forth in Section 365. Transform, in turn, cross-appeals the district court's determination that the vacatur of the bankruptcy court's order rendered the assumption and assignment of the lease void. We assume the parties' familiarity with the underlying facts and procedural history, to which we refer only as necessary to explain our decision to affirm.

## BACKGROUND

This case, now before us for a third time, arises from a dispute over a 100-year "lease" entered into by Sears and MOAC in 1991 for a property located at the Mall of America (the "MOAC Lease"). Sears sought, over MOAC's objection, to assume and assign the MOAC Lease to Transform as part of its bankruptcy proceedings. Under the terms of the MOAC Lease, Sears was required to pay annual rent of just $10, which it prepaid for the first thirty years. In addition, Sears was obligated to pay property taxes, and other fees and charges, amounting to between $1.1 and $1.2 million per year. Finally, Sears had the right to cease operations after fifteen years and to sublease the space or assign the MOAC Lease without obtaining MOAC's consent.

Sears filed for Chapter 11 bankruptcy in 2018. As part of that proceeding, Sears sold substantially all of its assets to Transform through a Section 363 sale. One of those assets included a right for Transform to designate and seek assumption and assignment of the MOAC

3

Lease.   However, when Transform sought approval from the bankruptcy court to designate the MOAC Lease for assumption and assignment, MOAC objected.   During the litigation over that objection, MOAC, Sears, and Transform stipulated that "[t]he deadline for the Debtors to assume or reject the leases pursuant to section 365(d)(4) of the Bankruptcy Code, including the [MOAC] Lease, is currently May 13, 2019," and agreed "to a further extension of the Section 365(d)(4) Period to and including June 30, 2019."   Joint App'x at 1645.   The parties entered into two subsequent, nearly identical stipulations to further extend the Section 365(d)(4) deadline.   The parties separately stipulated that the "Mall of America is a shopping center and the [MOAC] Lease is a shopping center lease pursuant to 11 U.S.C. § 365(b)(3)."   Joint App'x at 2040.

After holding an evidentiary hearing, the bankruptcy court denied MOAC's objection and approved the assumption and assignment of the MOAC Lease to Transform.   On MOAC's appeal, the district court initially determined that Transform could not be assigned the MOAC Lease because Transform failed to satisfy the "adequate assurance" requirements of 11 U.S.C. § 365(b)(3).   *See In re Sears Holdings Corp.*, 613 B.R. 51, 56 (S.D.N.Y. 2020) ("*Sears I*"). However, after Transform moved for reconsideration, the district court, applying then-settled Second Circuit law, set aside its prior decision and dismissed MOAC's appeal for lack of jurisdiction under 11 U.S.C. § 363(m).   *See In re Sears Holdings Corp.*, 616 B.R. 615, 618 (S.D.N.Y. 2020) ("*Sears II*").   The district court also denied MOAC's motion for reconsideration.   *See In re Sears Holdings Corp.*, No. 19-CV-9140 (CM), 2020 WL 3050554, *5 (S.D.N.Y. June 5, 2020) ("*Sears III*").

MOAC appealed to this Court the district court's jurisdictional dismissal in *Sears II*, as well as the denial of the reconsideration motion in *Sears III*, and Transform conditionally cross-

4

appealed the district court's merits decision in *Sears I* vacating the assumption and assignment order. We affirmed the district court's jurisdictional decision and declined to address the merits of Transform's cross-appeal. *See In re Sears Holdings Corp.*, Nos. 20-1846-bk, 20-1953-bk, 2021 WL 5986997, *1 (2d Cir. Dec. 17, 2021) ("*Sears IV*"). However, the Supreme Court vacated and remanded our decision, holding that Section 363(m) is not jurisdictional. *See MOAC Mall Holdings LLC v. Transform Holdco LLC*, 598 U.S. 288, 304–05 (2023).

On remand, we consequently considered Transform's cross-appeal of *Sears I* and agreed with the district court that Transform had failed to satisfy the strictures of Section 365(b)(3). *See In re Sears Holdings Corp.*, Nos. 20-1846-bk, 20-1953-bk, 2023 WL 7294833, *1 (2d Cir. Nov. 6, 2023) ("*Sears V*"). We remanded the case to the district court for it to determine "a remedial course." *Id*.

On remand to the district court, MOAC argued that Section 365(d)(4) of the Bankruptcy Code required that the MOAC Lease be deemed rejected and immediately surrendered to MOAC. Transform countered that it should retain the MOAC Lease under the common law good-faith purchaser doctrine, and that regardless, Section 365(d)(4) did not apply because the MOAC Lease was not a "true lease." The district court then (1) vacated the assumption and assignment of the MOAC Lease, (2) determined that Section 365(d)(4) did not apply, (3) concluded that Transform and Sears had neither waived nor forfeited their argument as to Section 365(d)(4), and (4) returned the MOAC Lease to the Liquidating Trustee. *See generally Sears VI*, 661 B.R. 298.

The Sears bankruptcy proceedings continued as this litigation involving MOAC and Transform wound its way through the federal court system. In October 2019, the bankruptcy

court approved Sears's Chapter 11 bankruptcy plan (the "Plan"), which was subsequently confirmed and became effective in October 2022. The Plan established the SRZ Liquidating Trust to hold assets not otherwise disposed of under the Plan. In aid of the Plan's confirmation and effectuation, Sears and parties to the bankruptcy proceeding entered into a global settlement (the "Settlement"). As part of the Settlement, which the bankruptcy court approved in September 2022, Transform and Sears agreed that in the event the assumption and assignment of the MOAC Lease was overturned, Sears would "take any actions that Transform may reasonably request to effect the assignment of the [MOAC] Lease to Transform" or "to allow Transform to obtain the economic benefits that [Sears] and Transform intended that Transform obtain from its acquisition of the [MOAC] Lease." Joint App'x at 2567. With the Plan and Settlement in place, the bankruptcy court entered its final decree in January 2023.

## DISCUSSION

Typically, "the rulings of a district court acting as an appellate court in a bankruptcy case are subject to plenary review." *Belton v. GE Cap. Retail Bank*, 961 F.3d 612, 614 (2d Cir. 2020) (alteration adopted) (internal quotation marks and citation omitted). However, where the district court "was the first and only court actually to decide" an issue, we review the district court's ruling under the standard we would ordinarily employ to review that determination. *Lawrence v. Wink*, 293 F.3d 615, 623 (2d Cir. 2002); *see, e.g.*, *id.* (applying the "abuse of discretion" standard to review the district court's Federal Rule of Civil Procedure 60(b) determination arising "in the course of its appellate review of the Bankruptcy Court" even though "the District Court was not really closer to the facts in rendering its decision . . . than [was the Second Circuit]"); *In re Charter Commc'ns, Inc.*, 691 F.3d 476, 483 (2d Cir. 2012) (reviewing

6

a district court's decision for an abuse of discretion where "we are reviewing the district court's own exercise of discretion").

## I.      Section 365(d)(4)

We agree with the district court that Section 365(d)(4) does not apply to the MOAC Lease because it is not a "true lease."

Section 365(d)(4) provides that a lease "shall be deemed rejected, and the trustee shall immediately surrender that nonresidential real property to the lessor, if the trustee does not assume or reject the unexpired lease by the earlier of" 120 days after the entry of an order for relief or the date of the bankruptcy plan's confirmation. 11 U.S.C. § 365(d)(4)(A). We have "interpreted § 365(d)(4) as applying only to a 'true' or 'bona fide' lease." *Int'l Trade Admin. v. Rensselaer Polytechnic Inst.*, 936 F.2d 744, 748 (2d Cir. 1991) ("*RPI*") (citation omitted). "[T]he proper inquiry for a court in determining whether § 365(d)(4) governs an agreement fixing property rights is whether the parties intended to impose obligations and confer rights significantly different from those arising from the ordinary landlord/tenant relationship." *Id.* (internal quotation marks and citation omitted). In conducting this inquiry, we focus on "the economic substance of the transaction and not its form." *Id.* (internal quotation marks and citation omitted).

In determining whether the MOAC Lease is a "true lease," we need look no further than our analysis in *RPI* itself. *RPI* involved a 99-year ground lease with a base rent for that entire term that was prepaid over the first three years of the lease. *Id.* at 746. The tenant was tasked, under the lease, with paying taxes, assessments, utilities charges, and other fees. *Id.* We concluded such a lease was not a "true lease" and was therefore not governed by Section

7

365(d)(4), finding that the "99 year term" of the lease and "its pre-paid rent" were the two essential features that "compel[led]" that conclusion. *Id.* at 749. We also noted that the lessee "assume[d] and discharge[d] many of the risks and obligations ordinarily attributed to the outright ownership of property, such as the payment of property taxes." *Id.* at 750 (internal quotation marks and citation omitted). Finally, we emphasized that to hold otherwise would amount to giving an inequitable windfall to the landlord. *Id.* at 751.

*RPI* is on all fours with this case. The MOAC Lease is for a term of 100 years. Sears prepaid its rent for the first thirty years of the lease term, and owed MOAC just $10 in annual rent thereafter. Sears paid taxes and other costs associated with the property. Another "indici[um] of ownership in the lessee" is that Sears could, after fifteen years of operation, cease to operate and sublease any portion of the property, or assign the entire lease, all without MOAC's consent. *See id.* Furthermore, as in *RPI*, "we are not unmindful of the equities at stake in this transaction." *Id.* MOAC has "received the substance of its bargained for consideration." *Id.* Thus, "[t]o permit it to recapture the leased premises" over sixty years before the expiration of the MOAC Lease "would amount to a 'windfall'" to MOAC. *Id.* "That a present reversion to [MOAC] would be grossly inequitable bolsters our conclusion that § 365(d)(4) does not apply to this unusual transaction." *Id.*

In short, because we conclude that the MOAC Lease is not a "true lease," it is not governed by Section 365(d)(4). Accordingly, there was no basis for the MOAC Lease to revert to MOAC once the district court vacated the assumption and assignment of the MOAC Lease to Transform.

## II.      Waiver and Forfeiture

MOAC alternatively contends that, even if the MOAC Lease is not governed by Section 365(d)(4), the district court erred in finding that Transform and Sears did not waive or forfeit their argument that the MOAC Lease is not a "true lease" under that subsection.[1]   We find this argument to be unavailing.

We generally review the district court's determinations as to waiver or forfeiture for an abuse of discretion.[2]   *See Amara v. Cigna Corp.*, 53 F.4th 241, 256 (2d Cir. 2022); *see also In re Charter Commc'ns, Inc.*, 691 F.3d at 483 (holding that we will review a district court's decision, in the context of a bankruptcy appeal, for an abuse of discretion where "we are reviewing the district court's own exercise of discretion").

### A.  Waiver

"[W]aiver is the intentional relinquishment or abandonment of a known right."   *United States v. Olano*, 507 U.S. 725, 733 (1993) (internal quotation marks and citations omitted). "Although we have recognized that waiver may be inferred from the conduct of the parties, we have emphasized that the conduct said to constitute a waiver must be clear and unequivocal, as waivers are never to be lightly inferred."   *U.S. D.I.D. Corp. v. Windstream Commc'ns, Inc.*, 775 F.3d 128, 136 (2d Cir. 2014) (alteration adopted) (internal quotation marks and citation omitted). "We will infer a waiver only where the parties were aware of their rights and made the conscious

---

[1] MOAC also argued below that Transform and Sears should be judicially estopped from raising the Section 365(d)(4) argument.   The district court rejected the argument and MOAC does not appeal that determination here.   *See Sears VI*, 661 B.R. at 326.

[2] MOAC contends that we should review the district court's waiver and forfeiture determinations *de novo* because there are no disputes about the factual record.   We need not resolve this issue, however, because our conclusions would remain the same under either standard of review.

choice, for whatever reason, to waive them." *Id.* (internal quotation marks and citation omitted).

"Mere negligence, oversight, or thoughtlessness does not create a waiver." *Id.* (internal

quotation marks and citation omitted).

MOAC principally argues that the parties' stipulations, including their statements that

the MOAC Lease is a shopping center lease under Section 365(b)(3), bind the parties as to the

meaning of "lease" under Section 365(d)(4). In advancing this argument, MOAC suggests that

we must resolve, as a matter of statutory interpretation, whether the term "lease" has a single

meaning throughout all of Section 365, as well as determine the scope of our holding in *In re*

*PCH Assocs.*, 804 F.2d 193 (2d Cir. 1986). We disagree. The doctrine of waiver requires us

to discern only the intent of the parties—not the intent of Congress—regarding the applicability

of Section 365(d)(4) here. We cannot infer from Transform's and Sears's stipulation to treat

the MOAC Lease as a shopping center lease under *another* subsection, Section 365(b)(3), that

they *intentionally* relinquished their right to argue that the MOAC Lease was not a "true lease"

under Section 365(d)(4). We need not, and do not, engage in any statutory interpretation in

coming to this conclusion.[3]

MOAC next argues that "the parties expressly stipulated that section 365(d)(4) applied

to the [MOAC] Lease." MOAC Br. at 14. We are unpersuaded. Those stipulations do

---

[3] To the extent MOAC suggests that our decision in *PCH* so clearly held that the term "lease" has a single definition throughout all of Section 365 such that it can be inferred from the stipulations here that Sears and Transform undoubtedly understood they were relinquishing any argument regarding the definition of lease under Section 365(d)(4), we find that argument unavailing. *PCH* required us only to interpret the contours of Section 365(d)(3) and (4), and we held that "section 365(d)(3), (4) requires a bona fide lease." 804 F.2d at 200. Any discussion in *PCH* about applying the "true lease" analysis to Section 365 as a whole is *dicta* and does not support a finding that the stipulations constituted an intentional relinquishment of the "true lease" argument.

10

nothing more than agree to an "extension of the Section 365(d)(4) Period" to a future date. Joint App'x at 1645, 1741, 2015. They neither affirmatively state that Section 365(d)(4) governs the MOAC Lease nor confirm that the MOAC Lease is a "lease of nonresidential real property" pursuant to Section 365(d)(4). In contrast, when the parties intended to stipulate that the MOAC Lease was governed by a specific provision of Section 365, they did so clearly and unequivocally. Specifically, the parties expressly stipulated that the "[MOAC] Lease is a shopping center lease pursuant to *11 U.S.C. § 365(b)(3)*." Joint App'x at 2040 (emphasis added). The absence of an unequivocal statement as to Section 365(d)(4), coupled with the parties' demonstrated ability to make such explicit stipulations, suggests that neither Transform nor Sears consciously abandoned their defense against the application of Section 365(d)(4) through the time-extension stipulations. At most, those stipulations evince Transform's and Sears's "oversight" or "thoughtlessness" as to the applicability of Section 365(d)(4) to the MOAC Lease, which is insufficient to constitute waiver. *U.S. D.I.D. Corp.*, 775 F.3d at 136.

In sum, we conclude that Transform and Sears, neither through stipulation nor prior conduct, waived their right to object to MOAC's attempted invocation of Section 365(d)(4) or to argue that the MOAC Lease is not a "true lease" under that subsection, as interpreted by *RPI*.[4]

## B. Forfeiture

We conclude that MOAC's argument that Transform has forfeited its ability to argue that the MOAC Lease was not a "true lease" under Section 365(d)(4) is similarly unavailing.

---

[4] Insofar as the district court's decision could be construed as engaging in statutory interpretation to reach its conclusions on waiver and forfeiture, we do not rely on such interpretation in our analysis and conclude, on any standard of review, that Transform and Sears did not waive their objection to the application of Section 365(d)(4).

11

"[F]orfeiture is the failure to make the timely assertion of a right." *Kontrick v. Ryan*, 540 U.S. 443, 458 n.13 (2004) (internal quotation marks and citation omitted). "Where a litigant's action or inaction is deemed to incur the consequence of loss of a right . . . the term 'forfeiture' rather than waiver is more appropriate." *Patterson v. Balsamico*, 440 F.3d 104, 112 (2d Cir. 2006) (alteration adopted) (internal quotation marks and citation omitted).

We agree with the district court that "there was no earlier phase in the litigation in which it would have been necessary—or even appropriate—for Transform or Sears to assert that the Lease was not a 'true lease' and thus not subject to § 365(d)(4)." *Sears VI*, 661 B.R. at 326. The Section 365(d)(4) issue only became live after we remanded this case to the district court to consider the proper remedial course in light of Transform's failure to satisfy Section 365(b)(3)(A). *See Sears V*, 2023 WL 7294833, at *1. Before then, "no one argued the point, and no court mentioned it." *Sears VI*, 661 B.R. at 326.

Neither Transform nor Sears was obligated to raise the "true lease" objection under Section 365(d)(4) at an earlier time in the litigation. Transform and Sears were victors in both the bankruptcy court and, with the exception of a brief reversal in *Sears I*, in the district court. Thus, they were the appellees throughout the appellate proceedings. As appellees, they were required only to "defend the decision of the lower court," not to "raise every possible alternate ground upon which the lower court could have decided an issue." *Brown v. City of New York*, 862 F.3d 182, 188 (2d Cir. 2017); *see also Universal Church v. Geltzer*, 463 F.3d 218, 229 (2d Cir. 2006) ("Although it behooves appellees to raise all their defenses on appeal because the appellate court can affirm on any basis supported by the record, even one not relied on by the lower court, we are not aware of any case requiring them to do so.") (citation omitted).

12

Accordingly, the district court did not err in finding MOAC's forfeiture argument to be without merit.

**III.     Return of the MOAC Lease to the Liquidating Trustee**

Finally, MOAC argues that the district court was without power to return the MOAC Lease to the Liquidating Trustee. Specifically, MOAC complains that the reversion of the MOAC Lease to the Liquidating Trustee failed to abide by Section 365's assumption procedures. This argument too falls short.

The district court's vacatur of the assumption and assignment effectively rendered the transfer of the MOAC Lease to Transform void *ab initio*. *See Sears VI*, 661 B.R. at 316. As a result, the MOAC Lease ends up where it began—as part of Sears's bankruptcy estate. Pursuant to the Plan, "all title and interest in all of the Liquidating Trust Assets, which constitute all assets of the Debtors that have not been distributed on or prior to the Effective Date, including without limitation all General Assets . . . as well as the rights and powers of each Debtor in such Liquidating Trust Assets, including, without limitation, all of the Debtors' rights under the Asset Purchase Agreement, shall irrevocably and automatically vest in the Liquidating Trust . . . ." Joint App'x at 2303–04. MOAC does not dispute on appeal that the MOAC Lease is the type of asset that fits this definition. The MOAC Lease is therefore properly in the control of the Liquidating Trustee. Moreover, because neither the Liquidating Trust nor its assets are now in bankruptcy, Section 365 and its attendant requirements simply no longer apply to the MOAC Lease. *See Adelphia Bus. Sols., Inc. v. Abnos*, 482 F.3d 602, 605 (2d Cir. 2007) ("*During a Chapter 11 reorganization*, 11 U.S.C. § 365(a) provides that 'the trustee, subject to the court's

13

approval, may assume or reject any executory contract or unexpired lease of the debtor.'"

(emphasis added)).

*          *          *

We have considered MOAC's remaining arguments and find them to be without merit.[5]

Accordingly, the judgment of the district court is **AFFIRMED**.

                                        FOR THE COURT:
                                        Catherine O'Hagan Wolfe, Clerk of Court

---

[5] We dismiss Transform's cross-appeal as moot. Pursuant to the Settlement, the practical effect of the affirmance is that the Liquidating Trustee will either "effect the assignment of the [MOAC] Lease to Transform" or "allow Transform to obtain the economic benefits that [Sears] and Transform intended that Transform obtain from its acquisition of the [MOAC] Lease." Joint App'x at 2567. Transform has not contended that the outcome would materially differ if it were to prevail on its cross-appeal. The cross-appeal therefore no longer presents a live case or controversy.

14